SANFORD vs. PRENTICE and others.

CONSTRUCTION OF STATUTES: (1, 2) *Electors — Voters. Chap.* 411, *P. & L. Laws of* 1866, *construed.* (3) *Power of School District to act under a statute, when exhausted.*

Ch. 411, P. & L. Laws of 1866, authorizes "the legal voters" of a certain school district to levy and collect a tax not exceeding a specified amount, for building a school house; and declares that "a majority of the legal voters of said district may, at any legally called special or annual meeting of said voters, determine the amount of moneys so to be levied and collected, and the time of collecting" the same, etc. *Held,*

1. That a majority of all the *qualified electors* of the district is not required for the levy of the tax, but only of those actually present and voting at a meeting duly called.

2. That the phrase "qualified elector," in an act of the legislature, means a person who is legally qualified to vote; while a "legal voter" means (unless a different meaning appears from other language in the act) a qualified elector who does *in fact* vote.

3. That where proceedings had at a meeting of said district, for the levy and collection of the tax, had been subsequently abandoned, the power of the district was not exhausted, but the tax might be levied and collected by virtue of subsequent proceedings.

APPEAL from the Circuit Court for *Sheboygan* County.

Action to restrain the officers of Joint School District No. 1, village of Sheboygan Falls, from levying a certain tax and issuing orders for the purpose of buying a site and building a school house. The district is located partly in the *village* of Sheboygan Falls, and partly in the *town* of Sheboygan Falls. The complaint alleges that the plaintiff is a citizen, free-holder and tax-payer within the school district; that the defendants are the officers of the district, which consists of more than 250 inhabitants; that at an annual school meeting held in this district on the 11th of July, 1870, a resolution was adopted that, for the purpose of purchasing a site and building a school house in the district, the sum of $10,000 should be raised and levied upon the property of the district, in that and the two

succeeding years, and that school district orders should be issued, based upon the levy [the sums and times of payment being set forth in the resolution], to be used in payment for such site and house.  It is further alleged that, prior to the passage of the resolution, there had been no certificate in writing made by the supervisors of the town, nor by the trustees of the village of Sheboygan Falls, in which village the school house of said joint school district is located, that in their opinion a sum larger than $1,000, and specifying such sum, should be raised by the district; that the said annual meeting was attended by a greatly less number than a majority of the legal voters of the school district, to wit: by less than 100, while the legal voters of the district number upwards of 300; that the officers of the district now threaten to issue and use the orders authorized by the resolution, and the plaintiff fears that unless they be restrained by the court, they will issue and use the orders, which may be transferred to the hands of *bona fide* holders, and become a charge upon the plaintiff's and other taxable property of the district.  Prayer, that the defendant officers, and their successors, be perpetually enjoined from levy ing the tax, or issuing, using or paying the orders.

Upon this complaint verified, and an affidavit supporting some of its material allegations, made by a person who states that he is a legal voter and tax-payer in the district, the court granted a preliminary injunction.

The defendants, upon answer and affidavits, moved before the circuit judge to dissolve the injunction; and the plaintiff filed counter-affidavits, at the hearing.

Copies of the records of two distinct meetings, held prior to the one mentioned in the complaint, were filed as exhibits annexed to affidavits.

By the answer, affidavits and exhibits, it appeared, that on the 28th of September, 1866, a special school meeting of the district was held upon the subject of raising money under the provisions of chap. 411, P. and L. Laws of 1866, at which

meeting .it was voted by those present to raise the sum of $10,000, to erect a school house; that at the annual meeting on the 26th of August, 1867, the resolution adopted at the former meeting was rescinded; that at the annual meeting on the 11th of July, 1870, duly called, action was again taken upon the subject under the provisions of the above mentioned law, and the resolution adopted which is set forth in the complaint; and that at this meeting a majority of the legal voters present voted in favor of the resolution.

Other allegations in these papers became immaterial.

The circuit judge denied the motion to vacate the injunction; and the defendants appealed.

*Taylor & MacLaren*, for appellants, contended that the complaint did not set out a good equitable cause of action against the defendants; and that the proceedings of the voters and school district board. were authorized by chap. 411, P. and L. Laws of 1866.

*Bentley & Seaman*, for respondent:

The specific ground of relief relied upon is, that the resolution set forth in the complaint was adopted before a certificate such as is required by the provisions of subd. 5, sec. 1, chap. 111, General Laws of 1866, had been made. Sec. 1 of that act, and sec. 21, chap. 155, Laws of 1863, contain all the general enactments relating to the *powers* vested in school meetings, whether annual or special. The meeting of July 11, 1870, being an *annual* meeting, sec. 1, chap. 111, Laws of 1866, is all we need examine in this connection. Chap. 411, P. and L. Laws of 1866, grants no power to the school district here in question, not possessed by it under the general statute of the same year. It does not attempt to exempt that district from compliance with any of the conditions of the general law. The only particular in which any change is made is, that section two adds one condition to the voting of $10,000, which the general law does not contain, to wit: it requires that the meeting proposing to vote that sum of money shall be attended by a *majority of all the legal voters of*

*the district.*  2. The district had exhausted its power under the private law on September 28, 1866.   If it is still claimed that this act authorizes this school district to vote a sum greater than $1,000 without conforming to the provisions of the general law, we suggest further that this statute was approved April 9, 1866, and the general law April 12, 1866; and the private law, so far as it would dispense with compliance with any provision of the general law, is repealed by sec. 11 of the latter.

[Many points not passed upon by the court, were elaborately discussed in the briefs of counsel.]

Dixon, C. J.   The only questions we shall consider in this case are as to the construction of section two of chapter 411, Private and Local Laws of 1866, and whether the power of the voters of the school district under that act was exhausted by reason of their having once taken proceedings in pursuance of it, which proceedings were subsequently abandoned. The whole act is as follows:

" Section 1.   The legal voters of joint school district No. 1, in the town of Sheboygan, town of Sheboygan Falls and village of Sheboygan Falls, Sheboygan county, are hereby authorized and empowered to levy and collect from the persons, corporations and property in said district liable to tax, such amount as may be necessary, not exceeding the sum of ten thousand dollars, for the purpose of erecting a school house or school houses in said district.

" Section 2.   A majority of the legal voters of said district may, at any legally called special or annual meeting of said voters, determine the amount of money so to be levied and collected, and the time of collecting said money, and, when so determined, said tax shall be collected in the same manner as other taxes are collected in said district.

" Section 3.   This act shall take effect from and after its passage and publication."

The question upon the construction of section two is, whether

the words "a majority of the legal voters of said district," as there used, mean a majority of all the persons in the district qualified to vote, or only a majority of those attending the meeting and actually casting their votes. A somewhat similar question came up in *Gillespie v. Palmer*, 20 Wis., 544, and the reasoning of this court in that case is in some respects applicable. The question there was upon the meaning and application of the words "a majority of all the votes cast at such election," found in the proviso of section 1, art. III. of the constitution, for the extension of the right of suffrage. The point was, whether the majority required was only of all the votes cast upon *the subject of extending the right of suffrage*, or whether it was a majority of all the votes cast at the election, regardless of the subjects upon which they were given, or including those given upon *all other subjects*. This court held to the former as the sound and true interpretation, and in so doing asserted, as a fundamental principle or rule in our form of government, that wherever a question is submitted to the decision or action of a majority of voters, the meaning is the decision or action of a majority of those persons qualified to vote and who do in fact vote upon the question or proposition submitted, unless some different intention is clearly expressed in the act or instrument providing for the submission, or plainly to be inferred therefrom. That principle is applicable to the question under consideration, and seems to furnish a sufficient test for determining the construction of the act. Here are no express words that the majority of actual voters shall not decide; nor is there anything in the language from which such intention is properly to be inferred. The primary and proper signification of the words " legal voters " is, persons qualified by law to vote and who do vote. There is a difference between an elector, or person legally qualified to vote, and a voter. In common parlance they may be used indiscriminately, but strictly speaking they are not the same. The voter is the elector who votes — the elector in the exercise of his franchise or privilege of voting — and not he

who does not vote. There would be no propriety in saying, in the sense of his having voted, that an elector was a voter at a meeting or election which he did not attend. And that is not the application which the words of the act are to receive; but they must be understood according to their primary and proper sense of actual voters. If the legislature had intended a majority of the *qualified electors* of the district, they would undoubtedly have used those words instead of the words "legal voters," or in some other way have made their intention plain.

As to the power of the voters having been exhausted by reason of the proceedings first taken and then abandoned, we perceive no reason for so holding. The authority conferred upon the voters is without limitation as to the time within which it shall be exercised, and there is no restriction upon the manner of exercising it, except that it shall be at some legally called special or annual meeting. The words are, "at any legally called special or annual meeting." If, therefore, the voters, having once determined to levy and collect the tax, saw fit afterwards to abandon the resolution or rescind it, no good reason is perceived for saying that the authority might not subsequently be exercised. A general power of this nature cannot be said to be exhausted until it has in fact been carried into execution.

These two questions, being resolved against the plaintiff, are decisive of the order appealed from. The other points presented by counsel are not considered. The motion to vacate the preliminary injunction should have been granted, and the order denying the same must be reversed, and the cause remanded for further proceedings according to law.

*By the Court.*— So ordered.