[No. 1334½.]

THE STATE OF NEVADA ex rel. E. D. BOYLE, Relator, v. THE STATE BOARD OF EXAMINERS, Respondent.

ELECTORAL QUALIFICATIONS.—The qualifications of an elector are those prescribed by the constitution, and they cannot be altered or impaired by the legislature. Registration is not an electoral qualification, but is only a means for ascertaining and determining in a uniform mode whether the voter possesses the qualifications required by the constitution, and to secure in an orderly and convenient manner the right of voting.

CONSTITUTIONAL AMENDMENTS — CONSTITUTION CONSTRUED. — The words "voting thereon" contained in Sec. 1 of Art. XVI of the Nevada constitution, do not refer to the words "members of the legislature" in the same section as their antecedent, and consequently do not limit the right to vote at a special election upon the question of the ratification of proposed constitutional amendments to electors who were qualified to vote for members of the legislature who voted upon the proposed amendments. All electors of the state are entitled to vote upon the submission of a proposed constitutional amendment.

ADOPTION OF PRIOR REGISTRY LIST.—The constitution has committed the subject of the registration of electors to the legislature for the purpose of determining who are qualified voters, and laws of this description must be calculated to facilitate and secure, rather than to subvert or impede, the exercise of the right, to vote. The adoption by the legislature of the registry lists of the general election of 1888 for the special election held three months later in 1889 is not obnoxious to constitutional requirements, but on the contrary is commendable as being calculated to facilitate, rather than to impede, the exercise of the right to vote.

ORIGINAL application for the writ of mandate.

The facts sufficiently appear in the opinion.

*W. S. Wood, William Woodburn* and *T. Coffin*, for Relator.

(Oral argument. No brief on file.)

*The Attorney General*, for Respondent.

(Oral argument. No brief on file.)

By the Court, BELKNAP, J.:

This is an application for a writ of *mandamus* requiring the board of examiners to order the publication of certain proposed amendments to the constitution of the state, preliminary to their submission to the people at the approaching general election. The proposed amendments are fourteen in number, and are those which were submitted to a vote of the people at the special election, held upon the 11th day of February, 1889, under the provisions of a law providing for such election, approved January 19, 1889. (Stat. 1889, p. 14.)

The application is made upon the ground that the law authorizing the special election is unconstitutional and void, and that the proposed amendments were not, therefore, legally submitted to the voters of the state. The submission at the special election being invalid, it is now the duty of the board, it is said, to order publication under a general law of the state which provides that, whenever the conditions prescribed by the constitution for its amendment have been complied with by the legislature, the board of examiners shall order such proposed amendments to be published in a daily newspaper of general circulation for the period of ninety days, preceding any general elec-

tion. (Stat. 1887, p. 122.) It is contended that the statute under which the special election was held is unconstitutional, in that it does not prescribe the qualifications imposed by the constitution upon electors voting upon amendments to the constitution.

The constitution defines the course to be pursued by the legislature in the matter of amendments, and requires that they shall be submitted to a vote of the people. "And if the people," the constitution proceeds to say, "shall approve and ratify such amendment or amendments by a majority of the electors qualified to vote for members of the legislature voting thereon, such amendment or amendments shall become a part of the constitution." (Article 16, Sec. 1.)

The contention is that the voters registered under the act of January 19, 1889, were not qualified to vote upon the proposed amendments, because they were not, at the day of the special election, registered, so as to have entitled them to have voted for a member of the legislature, if one were then to have been chosen. The error of the position lies in the assumption that registration is an electoral qualification. The qualifications of an elector are prescribed by the constitution (Sec. 1, Art. II) and cannot be altered or impaired by the legislature. (*State ex rel. Whitney* v. *Findley*, 20 Nev. 198.) The registration laws of the state do not attempt to add to these qualifications. These laws simply provide means for ascertaining and determining, in a uniform mode, whether the voter possesses the necessary qualifications, and are also intended to secure, in an orderly and convenient manner, the right of voting. Upon this subject Chief Justice Dillon, speaking for the supreme court of Iowa, in *Edmonds* v. *Banbury*, said: "But the legislature, while it must leave the constitutional qualifications intact, and cannot add new ones, may, nevertheless prescribe regulations to determine whether a given person who proposes to vote possesses the required qualifications." (28 Iowa, 272.) "No registry law can be sustained," said the supreme court of Wisconsin, "which prescribes qualifications of an elector additional to those named in the constitution, and a registry law can be sustained only, if at all, as providing a reasonable mode or method by which the constitutional qualifications of an elector may be ascertained and determined, or as regulating reasonably the exercise of the constitutional right to vote at an election." (*Dells* v. *Kennedy*,

49· Wis. 558.)  " It is. now generally admitted that these laws do· not add to the constitutional qualifications of voters." (Mc- Creary, Elect.. Sec. 7.)

Another objection made to the law involves a different con- struction of the same constitutional clause.    It is claimed that the words " voting thereon," contained in the quoted clause, refer to the words "members of the legislature," as their ante- cedent, and this view leads to the result that only those were competent to vote at the special election who were qualified to vote for the members of the legislature who voted upon the proposed amendments.    The construction contended for would lead to results which could not have been contemplated.    For instance, the right of an elector to vote would depend not alone upon his qualification to vote for members of the legislature of the session at which the proposed amendment was considered, but, also, upon the fact whether such member or members did actually vote upon the proposed amendment.    For if, from any cause, the member did not vote, it would seem that the elector would be disqualified.    Other results quite as surprising and unreasonable, but not necessary to suggest or discuss, would proceed from the adoption of the construction.    Without pur- suing the matter further, we consider that all of the electors of the state are entitled to vote upon the submission of a proposed amendment.    We are led to this conclusion by a consideration of the provision under discussion in connection with the other provisions of the constitution bearing upon the same subject, and the theory of our political system.

The power of the great body of the people as an organized body politic to amend or revise the constitution of their state is a fundamental principle of the governments of the states of the Union.    The power is expressly declared in the constitution of this state in these words:  " All political power is inherent in the people    Government is instituted for the protection, se- curity and benefit of the people, and they have the right to alter or reform the same whenever the public good may require it."  (Article 1, Sec. 2.)    And, in defining the qualifications of electors, the constitution further declares that every elector " shall be entitled to vote for all officers that now are or may be elected by the people, and upon all questions submitted to the electors at such election."  (Section 1, Art. 2.)    The clause under consideration must be construed with reference to these

provisions. The conclusion reached is in harmony with them, and is supported by the language of the clause itself.

Objection is also made to the provisions of the law adopting the registry lists of the general election of 1888. The constitution has committed the subject of the registration of electors to the legislature. The object of these laws, as before stated, is to determine the qualifications of the voters. Laws of this description must be reasonable, uniform and impartial, and must be calculated to facilitate and secure, rather than to subvert or impede, the exercise of the right to vote. (*Monroe* v. *Collins*, 17 Ohio Stat. 685.) The provisions of the statute meet these requirements. The special election was to be held about three months after the general election of 1888, and electors registered for the general election, and continuing qualified voters, were not required to make further registration. The adoption of the registry lists of the then recent election, and dispensing with the burdensome requirement of a second registration, commend themselves as reasonable regulations, calculated to facilitate, rather than impede, the exercise of the right to vote.

Relator having failed to establish the invalidity of the special election law, or the proceedings thereunder, it is ordered that the writ of *mandamus* be denied.