STATE OF FLORIDA, ex rel. W. C. THOMAS and WHITFIELD BRYAN, *Petitioners*, v. W. T. WILLIAMS, Chairman, and W. T. WATKINS, J. N. HOLMES, J. W. LESTER and JOHN T. GUNN, as the Board of County Commissioners of Hillsborough County, Florida, *Respondents*.

Division B.

Opinion filed October 21, 1930.

*Burton G. Henson,* for Petitioners;

*Sutton, Tillman & Reeves,* for Respondents.

BUFORD, J.—The petitioners filed their petition for alternative writ of mandamus which was issued, and, there-

upon, the respondents filed demurrer and motion to quash, like grounds appearing in each of such pleadings. The alternative writ alleges:

"First: That the Relator, Whitfield Bryan, qualified to vote as a Democrat in the general primary election held in Hillsborough County, Florida, on June 3 and 24, respectively, A. D. 1930, to the extent of causing his name to be registered in the office of Supervisor of Registration of Hillsborough County, Florida, but did not pay his 1929 poll and capitation tax and did not vote or attempt to vote in either of said primaries, and the said Whitfield Bryan did not petition or attempt to be a candidate for any office in either of the said. primaries; and the said relator W. C. Thomas also qualified to vote as a Democrat in the said primary election held in Hillsborough County, Florida, on June 3 and 24, A. D. 1930, respectively, to the extent of causing his name to be registered in the office of the Supervisor of Registration for Hillsborough County, Florida, as a Democrat, but paid no poll or capitation tax for the reason that he was over the age of fifty-five years and exempt from said tax, but the said W. C. Thomas did not vote or attempt to vote in either of said primaries, and the said W. C. Thomas did not petition or attempt to be a candidate in either of said primaries.

"Second: They are each qualified electors of Hillsborough County, State of Florida; that they 'have not participated "as a voter or candidate," in the affairs of a political party furnishing a nominee' for the office of County Commissioner (or any other office during its last convention or primary election.

"Third: That they have in writing petitioned and requested the Board of County Commissioners of Hillsborough County, Florida, to have and to cause each of

their names to be properly printed on the official ballots as independent candidates for the offices of County Commissioner, of Hillsborough County, Florida, for the Commissioner's District, of Hillsborough County, Florida, known as Commissioner's District No. 1 and 5, respectively, to be voted upon by the electors of Hillsborough County, Florida, at and during the ensuing general election to be held in said county on November 4th, A. D. 1930.

"Fourth: That their several written petitions are each signed by at least twenty-five qualified electors of Hillsborough County, Florida, qualified to vote in the ensuing general election to be held in Hillsborough County, Florida, on November 4, 1930; and that the said written petitions so signed and executed were each duly filed with the said Board of County Commissioners not more than sixty days nor less than twenty days before the said ensuing general election; and

"Notwithstanding that the said relators are each qualified electors of Hillsborough County, Florida, neither of whom "has participated, as a voter or candidate, in the affairs of a political party furnishing a nominee," for the office of County Commissioner, (or any other office) during its last convention or primary election; and notwithstanding the said relators have each requested of and from the said members making up and comprising the Board of County Commissioners of Hillsborough County, Florida, by their written petition signed by at least twenty-five electors within Hillsborough County, Florida, and qualified to vote in Hillsborough County, Florida, in the ensuing general election to be held on November 4, 1930, that their name be printed upon the official ballots as candidates for the office of County Com-

missioner in their respective Commissioner Districts of said County; and

"Notwithstanding the said written petitions were duly filed with the said County Commissioners not more than sixty days nor less than twenty days before the said ensuing general election petitioning that the name of the said relator, Whitfield Bryan, be printed on the official ballot to be used at said ensuing general election, as a candidate for the office of County Commissioner, Commissioner's District No. 1, of Hillsborough County, Florida, and the name of W. C. Thomas to be also printed on said official ballots to be used at said ensuing general election as an independent candidate for the office of County Commissioner, Commissioner's District No. 5, of Hillsborough County, Florida, and notwithstanding the said relators have complied with all the provisions of the statutes, as aforesaid and desire that their names be placed upon the official ballots to be used in the ensuing general election in said County and State as candidates for the respective offices hereinbefore mentioned, the said Board of County Commissioners and each of them have by resolution of said Board officially refused, and have notified the said relators of their refusal, to cause the names of the relators to be printed on the official ballots as Candidates for County Commissioners of the respective districts aforesaid or allow, permit, authorize and/or cause the names of relators to be printed on said ballots to be used in the ensuing general election to be held on November 4, 1930, in Hillsborough County, Florida."

The demurrer and the motion to quash are in tenor and effect alike and for grounds of demurrer and for grounds of motion to quash, allege:

"It affirmatively appears from the pleadings in this cause that both of the relators herein, to-wit: W. C. Thomas and Whitfield Bryan, registered before the Supervisor of Registration in Hillsborough County, Florida, prior to the general primary held in Hillsborough County, Florida, on June 3, 1930, and June 24, 1930, as Democrats and it further affirmatively appears from said pleadings that the Democratic party has a regular party nominee in the general election to be held November 4, 1930, for the same offices that relators' petition shows they·are candidates for, to-wit: W. C. Thomas, as candidate for Commissioner in District No. 5, and Whitfield Bryan as Commissioner in District No. 1.

"Wherefore these respondents say that such action on the part of the relators, to-wit: registering for the said Primary is such a participation in the affairs of a Political Party having a nominee in the general election as to prevent these respondents from printing the names of said relators upon the official ballots for the November general election.

II.

"The pleadings in this cause show that neither of the relators has any clear legal right to the relief prayed for in the petition and alternative writ, to-wit: having their names printed on the official ballots for the general election to be held November 4, 1930, for the reason that both of the said relators registered as Democrats prior to the General Primary held in Hillsborough County, Florida, on June 3, 1930, and June 24, 1930,· and having registered as Democrats both of them have participated in the affairs of the Democratic Party, and the Democratic Party having regular nomi-

nees in said election, it would be unlawful and contrary to Section 312, Comp. Gen. Laws of Florida, 1927, for these respondents to print the names of the relators on the official ballots as candidates for County Commissioner from District No. 5 and County Commissioner from District No. 1, respectively, in the General Election to be held November 4, 1930.

### III.

"The facts as set forth in the petition and alternative writ of mandamus show clearly that the relators are not entitled to the relief demanded by said petition and alternative writ of mandamus."

It will be observed that the pleadings present but one question for determination by this Court and that is whether or not a person eligible for registration by registering under the provisions of the Primary Law of the State of Florida thereby comes within the purview of the provisions of that part of Section 256, Rev. Gen. Stats. 1920, 312 Comp. Gen. Laws 1927, as follows:

"Any qualified elector who has not participated, as a voter or candidate, in the affairs of a political party furnishing a nominee, as aforesaid, during its last convention or primary election, shall be entitled to have his or her name printed on said ballots for any office, upon request for him or her to be a candidate, by written petition signed, in case of a candidate for a State or Federal office, by at least twenty-five qualified electors from each county participate therein; in case of a county or municipal officer, by at least twenty-five qualified electors within such county or municipality, which electors shall be qualified to vote in the ensuing general election to be held,"

and is thereby precluded from the privilege of having his name placed upon the official general election ballot pursuant to petition signed by twenty-five qualified electors within the county.

Section 361, Rev. Gen. Stats. 1920, 418 Comp. Gen. Laws 1927, provides in part:

"WORDS AND PHRASES DEFINED. — The words and phrases in this Article shall, unless such construction be inconsistent with the context, be construed as follows:

"1. The word 'voter' shall have the same meaning as the word 'elector'."

With this in view, and reverting to Section 312, *supra,* we find that in one sentence the word "elector" and the word "voter" were used in the context in such manner as to indicate that it was not intended to give both words the same meaning in that sentence. It may be said to be well settled that the word "voter" has two meanings. One is, a qualified elector who is in all respects entitled to vote in a certain election but does not vote, and the other is, such an elector who does actually vote.

In State v. Blaisdell et al., 18 N. Dak. 31, the Supreme Court of North Dakota say:

"We next come to the interpretation of the words 'votes cast' and to aid us in this we may seek a definition of the word 'voter.' This word, like the word 'elector,' is used in various senses, but when used in apposition to, or in contrast with, the word 'elector' it has but one meaning. A voter in this sense is an elector who exercises the privilege, conferred upon him by the Constitution and the laws, of voting. He is an elector who does vote, and in the present instance a

voter is one who voted at the last November general election, and on the question in controversy is one who actually voted, either for or against the creation of the new county. Am. & Eng. Enc. of Law, at page 1075, says: 'The word "voters" has two meanings—persons who perform the act of voting, and persons who have the qualifications entitling them to vote.' And in Sanford v. Prentice, *supra,* the term 'legal voter' is defined, and we think properly so, as meaning unless a different meaning appears from other language in the act, a qualified voter who does in fact vote, as the elector in the exercise of his franchise or privilege of voting. An elector is not a voter unless he votes, yet he still retains his qualifications as an elector.''

The Supreme Court of Florida in the case of State ex rel. v. County Commissioners of Sumter County, 19 Fla. 518, in construing Section 4 of Chapter 1695, Acts of 1869, say:

''The term 'majority of registered votes' as used in the act (Chap 1695, Sec. 4) must be construed to mean a majority of those qualified electors who vote at the election, and not a majority of all who had the right to vote. Everett v. Smith, 22 Minn. 53; 10 Ib. 107; 16 Ib. 249.''

Section 4 of the Act referred to reads as follows:

''The County Commissioners, as aforesaid, shall, on the fifth day after such election ordered as aforesaid, publicly canvass the same, and the place receiving a majority of the number of *registered votes* shall be the county site of said county for ten years, and it shall be the duty of said Commissioners to have erected, as soon as possible, a court house and jail and provide suitable

offices for all county officers, as are required by law to keep their offices at the court house, at the place so selected as the county site as aforesaid.''

In this case the Court construed the word ''votes'' in the Act to mean ''voters.''

In Board of Supervisors of Carroll County v. Smith, 28 Law Ed. 517, the Supreme Court of the United States having under consideration Article XII, Sec. 14, of the Constitution of Mississippi, reading as follows:

''The Legislature shall not authorize any county, city or town to become a stockholder in or to lend its credit to any company, association or corporation, unless two-thirds of the qualified voters of such county, city or town at a special election or regular election to be held therein, shall assent thereto,''

Say:

''The Constitution of Mississippi, although it does not recognize any voters as qualified, except such as are registered, does not make all persons, registered as such, qualified. And yet, if it is to be construed, in the clause in question, as referring to the registration as conclusive of the number of qualified voters, then no proof is competent to purge the list of those who never were qualified or have died, removed or become otherwise disqualified, thus obliterating the distinction between registered and qualified voters, and if, on the other hand, it is to be construed as meaning voters qualified, in fact and in law, without reference to the sole circumstance of registration, then the body of electors is as indefinite as though there were no registration, and the

determination of the whole number, if an actual enumeration is required to determine how many are two-thirds thereof, is completely a matter *in pais* and must be inquired of and ascertained, in each case, by witnesses. The difficulty, if not the impossibility, of reaching results by such methods, amounts almost to demonstration, that such could not have been the legislative intent or the meaning of the Constitution. The number and qualification of voters at such an election is determinable by its results, as canvassed, ascertained and declared by the officers appointed to that duty, or as subsequently corrected by a contest or scrutiny in a direct proceeding, authorized and instituted for that purpose; it can not be contested in any collateral proceeding, either by inquiry as to the truth of the return or by proof of votes not cast, to be counted as cast against the proposition, unless the law clearly so requires. In our opinion the Constitution of Mississippi did not mean, in the clause under consideration, to introduce any new rule. The assent of two-thirds of the qualified voters of the County, at an election lawfully held for that purpose, to a proposed issue of municipal bonds, intended by that instrument, meant the vote of two-thirds of the qualified voters present and voting at such election in its favor, as determined by the official return of the result. The words 'qualified voters' as used in the Constitution, must be taken to mean not those qualified and entitled to vote, but those qualified and actually voting. In that connection, a voter is one who votes; not one who, although qualified to vote, does not vote.''

In Sanford v. Prentice et al., 28 Wis. 358, the Court having under consideration Section 2 of Chapter 411, Private and Local Laws of 1866, which reads as follows:

"Section 2. A majority of the legal voters of said district may, at any legally called special or annual meeting of said voters, determine the amount of money so to be levied and collected, and the time of collecting said money, and, when so determined, said tax shall be collected in the same manner as other taxes are collected in said district,"

Say:

"The question upon the construction of Section Two is, whether the words 'a majority of the legal voters of said district,' as there used, mean a majority of all the persons in the district qualified to vote, or only a majority of those attending the meeting and actually casting their votes. A somewhat similar question came up in Gillespie v. Palmer, 20 Wis. 544, and the reasoning of this court in that case is in some respects applicable. The question there was upon the meaning and application of the words 'a majority of all the votes cast at such election,' found in the proviso of Sec. 1, Art. III of the constitution, for the extension of the right of suffrage. The point was, whether the majority required was only of all the votes cast upon *the subject of extending the right of suffrage,* or whether it was a majority of all the votes cast at the election, regardless of the subjects upon which they were given, or including those given upon *all other subjects.* This court held to the former as the sound and true interpretation, and in so doing asserted, as a fundamental principle or rule in our form of government, that wherever a question is submitted to the decision or action of a majority of voters, the meaning is the decision or action of a majority of those persons qualified to vote and who do in fact vote upon the question or proposition submitted,

unless some different intention is clearly expressed in the act or instrument providing for the submission, or plainly to be inferred therefrom. That principle is applicable to the question under consideration, and seems to furnish a sufficient test for determining the construction of the act. Here are no express words that the majority of actual voters shall not decide; nor is there anything in the language from which such intention is properly to be inferred. The primary and proper signification of the words 'legal voters' is persons qualified by law to vote and who do vote. There is a difference between an elector, or person legally qualified to vote, and a voter. In common parlance they may be used indiscriminately, but strictly speaking they are not the same. The voter is the elector who votes—the elector in the exercise of his franchise or privilege of voting—and not he who does not vote. There would be no propriety in saying, in the sense of his having voted, that an elector was a voter at a meeting or election which he did not attend. And that is not the application which the words of the act are to receive; but they must be understood according to their primary and proper sense of actual voters. If the legislature had intended a majority of the *qualified electors* of the district, they would undoubtedly have used those words instead of the words 'legal voters,' or in some other way have made their intention plain.''

To like effect is the holding in the case of Mills v. Hallgren by the Supreme Court of Iowa, reported 124 N. W. R. 1077.

The legislature must have intended by the provision above quoted from Section 312, *supra*, that something more than mere registering as a qualified elector should have been required to preclude one from becoming an independent

candidate by petition for an office to be voted for in the general election. Otherwise, the Act would have stated that any qualified elector who had not registered declaring his party affiliation, or otherwise participated in the affairs of a political party, might have his name placed upon the general election ballot by petition. But, instead of doing that, the legislature declared that "any qualified elector who has not participated as a voter or candidate," etc., "shall be entitled to have his or her name printed on the ballot," etc.

It is clear that the legislature intended some distinction to be drawn between the meaning of the word "elector" and the meaning of the word "voter" as used in the quotation above. We think the enunciation in the case of State v. Blaisdell et al., *supra,* in defining the word "voter" saying: "This word, like the word 'elector' is used in various senses, but when used in opposition to or in contrast with the word 'elector' it has but one meaning. A voter in one sense is an elector who exercises the privilege conferred upon him by the Constitution and laws of voting. He is an elector who does vote," is sound.

For the reasons stated, the motion to quash is denied; the demurrer is overruled and the respondents are given five days from the date of filing of this opinion in which to file answer or return in this Court, in default of which peremptory writ will issue.

TERRELL, C. J., and WHITFIELD, STRUM and BROWN, J. J., concur.

ELLIS, J., agrees to the issuing of alternative writ, but does not agree to argument in opinion.