CATON ET AL. *v.* FRANK, MAYOR PRO TEM., ET AL.

No. 3108

May 2, 1935.        44 P. (2d) 521.

*C. R. Pugh,* for Relator:

*Le Roy F. Pike,* City Attorney of Reno, for Respondents:

## OPINION

By the Court, DYSART, District Judge:

This is an original proceeding in mandamus to compel respondents to proceed upon a petition signed by a number of the qualified voters of the city of Reno to amend the present charter of the city of Reno, which would change the present city charter from a charter providing for a mayor and five city councilmen to a city managerial form of government.

Upon the petition as filed, an alternative writ of mandate was issued out of and under the seal of this court directing the said respondents to appear and show cause before this court, at the courtroom thereof, on the 13th day of March, 1935, at 10 o'clock a. m. of said day, why an order should not be made and why a peremptory writ of mandate should not issue ordering the said respondents to adopt a resolution of the council of the city of Reno amending the charter of the said city of Reno, Washoe County, Nevada.

The return day of said writ was, by order of this court, continued until the 15th day of March, A. D.

1935. Upon the said 15th day of March, 1935, and at the hour of 10 o'clock a. m., the respondents appeared and, in answer to said petition, filed a demurrer to the petition, but made no further answer to said petition. The matter was orally argued by respective counsel and submitted to the court upon briefs for its decision.

Respondent's demurrer to relators' petition for a writ of mandate alleged, among other things, the following grounds:

(1) That subdivision 2 of section 1257 N. C. L. 1929, the statute upon which relators rely for their writ of mandate, is unconstitutional and void, in that it is in conflict with section 8 of article 8 of the constitution of the State of Nevada (section 138 N. C. L. 1929) ; that said subdivision of said section 1257 N. C. L. 1929, in effect, permits the amendment of a charter by the filing of a petition signed by only a percentage of the qualified voters, when said section 8 of article 8 of the constitution contemplates the amendment of a city charter only by an election called for that purpose, at which all of the electors are permitted to express their choice by vote.

(2) That petitioners set forth in their petition for a writ of mandate that the petition was signed by 5,834 "qualified electors," when the said subdivision 2 of section 1257 N. C. L. 1929, upon which relators rely, requires such a petition to be signed by sixty percent of the "qualified voters" in order to invoke the powers of the city council of the city of Reno.

(3) That the petition does not state sufficient facts to constitute cause for the issuance of a writ of mandate.

We will dispose of these questions in the order named.

■ Section 8 of article 8 of the constitution of Nevada provides: "The legislature shall provide for the organization of cities and towns by general laws and shall restrict their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, except for procuring supplies of water; provided, however, that the legislature may, by general laws, in

the manner and to the extent therein provided, permit and authorize the electors of any city or town to frame, adopt and amend a charter for its own government, or to amend any existing charter of such city or town."

It will be noted that this provision of the constitution provides that the legislature may, by general laws, in the manner and to the extent therein provided, permit and authorize the electors of any city or town to frame, adopt, and amend a charter for its own government, or to amend any existing charter of such city or town.

Now, let us look to the statute in question, namely, subdivision 2 of an act entitled "An Act fixing the method by which the charters of incorporated cities or towns may be amended," approved March 15, 1927, being subdivision 2 of the said section 1257 N. C. L. 1929, which reads as follows:

"Upon the filing of a verified petition bearing the signatures of not less than 60% of the qualified voters of the city or town praying for the adoption of any amendment or amendments fully set forth in such petition and exhibited to each of such signers prior to the signature being affixed thereto. Said signatures need not all be appended to one paper, but each signer shall add to his signature his place of residence. One of the signers of each such petition shall swear that the statements therein made are true to the best of knowledge and belief.

"Upon the filing of any such petition bearing the required number of signatures, duly verified and setting out therein the amendment or amendments proposed, it shall be the duty of the governing body of such city or town to adopt such amendment or amendments by resolution without further proceeding."

It will be noted that said subdivision 2 provides that a city charter may be amended upon a petition signed by sixty percent of the qualified voters. It will also be noted that section 8 of article 8 of the constitution authorizes the legislature, by general laws, to permit the "electors" of a city not only to amend an existing

charter, but to frame and adopt a charter. It, therefore, clearly appears that the statute in question is in harmony with the constitution.

We are, therefore, unable to agree with respondents' contention that section 8 of article 8 of the constitution limits the electors of a city to the adoption of any amendment of a charter to a majority of the vote cast at an election, but this court is of the opinion, and so holds, that the legislature may, under the powers granted by the said section 8 of article 8, provide any reasonable and uniform method whereby the qualified voters of a city may, by a majority, express a desire to amend such charter, as by a proper petition signed by sixty percent of the qualified voters, as is provided by said subdivision 2 of said section 1257 N. C. L. 1929, which, we hold, is not in conflict with said provision of the constitution.

█ It is a well-settled rule that, where the constitutionality of a statute is questioned, every reasonable doubt must be resolved in favor of the statute. In the case of State v. Gee Jon et al., 46 Nev. 418, 211 P. 676, 677, 217 p. 587, 30 A. L. R. 1443, this court held: "Every enactment of the legislature must be deemed in harmony with the constitutional provisions until the contrary clearly appears."

█ We come now to a consideration of the second question raised by respondents, namely, that the petition recites that the petition to amend the charter was signed by 5,834 qualified electors, when the statute provides that such petition must bear the signatures of "not less than 60% of the qualified voters."

We are of the opinion that the petitioners failed to bring themselves within the terms of subdivision 2 of said section 1257 N. C. L. 1929, which provides that sixty percent of the qualified voters may file a verified petition praying for the adoption of amendments to a city charter. We are of this view because the petition herein alleges that sixty percent of the "qualified electors" signed such petition, instead of alleging that sixty percent of the "qualified voters" signed said petition.

Our state constitution, section 1 of article 2, provides how and by whom a franchise may be enjoyed, and reads as follows: "All citizens of the United States (not laboring under the disabilities named in this constitution) of the age of twenty-one years and upwards, who shall have actually, and not constructively, resided in the state six months, and in the district or county thirty days next preceding any election, shall be entitled to vote for all officers that now or hereafter may be elected by the people, and upon all questions submitted to the electors at such election; provided, that no person who has been or may be convicted of treason or felony in any state or territory of the United States, unless restored to civil rights, and no idiot or insane person shall be entitled to the privilege of an elector. There shall be no denial of the elective franchise at any election on account of sex."

Counsel for petitioners herein contends that the use of the words "qualified electors" in the petition, instead of "qualified voters," was an inadvertence, and not intended. Counsel further says: "Even so, we contend 'qualified voter' is sufficiently pleaded, because 'qualified voter' is included in 'qualified elector.'" To sustain the contention, our attention is directed to the case of Parus v. District Court, 42 Nev. 229, 174 P. 706, 4 A. L. R. 140, and other authorities.

We are of the opinion that "qualified elector" and "qualified voter" are not necessarily synonymous.

Whether "qualified elector," as used in the constitution, and "qualified voter," as that term is used in section 1257 N. C. L. 1929, are synonymous depends entirely upon the intention of the legislature in using the term "qualified voter."

In our opinion the case of Parus v. District Court, supra, does not sustain the contention made for it. The only language in that opinion, which it is contended sustains the contention, is the next to the last paragraph on page 235 of 42 Nev., 174 P. 706, 708. As we interpret that paragraph, it simply undertakes to state when a woman is a "qualified elector," and such

elector has a right to vote when she complies with the election laws relative to registration.

We find a variety of definitions of "qualified voter." In State ex rel. Thomas v. Williams, 100 Fla. 996, 130 So. 428, 432, it is said: "There is a difference between an elector, or person legally qualified to vote, and a voter. In common parlance they may be used indiscriminately, but strictly speaking they are not the same. The voter is the elector who votes—the elector in the exercise of his franchise or privilege of voting— and not he who does not vote. There would be no propriety in saying, in the sense of his having voted, that an elector was a voter at a meeting or election which he did not attend."

In Shearer et al. v. Board of Supervisors, etc., 128 Mich. 552, 87 N. W. 789, 790, the court says: " 'The "voters of the county," referred to by all such statutes, are necessarily the voters who vote at the elections, since the result in each case must be determined by a count of the ballots cast, and not by an inquiry as to the number not cast.' This view has the support of the supreme court of the United States in an opinion by Mr. Justice Mathews, Carroll County v. Smith, 111 U. S. 556, 4 S. Ct. 539, 28 L. Ed. 517."

The supreme court of North Dakota in State ex rel. McCue v. Blaisdell, 18 N. D. 31, 119 N. W. 360 at page 363, says: "We next come to the interpretation of the words 'votes cast,' and to aid us in this we may seek a definition of the word 'voter.' This word, like the word 'elector,' is used in various senses."

In Mills v. Hallgren, 146 Iowa 215, 124 N. W. 1077, 1079, it is said: "The meaning of the word 'voters' depends on the connection in which used, and is not always equivalent to 'elector.' "

The court said in Sanford v. Prentice, 28 Wis. 358, 362: "There is a difference between an elector, or person legally qualified to vote, and a voter."

In Board of Supervisors of Carroll County v. Smith, 111 U. S. 556, 4 S. Ct. 539, 544, 28 L. Ed. 517, the supreme court of the United States said: "The words

'qualified voters,' as used in the constitution, must be taken to mean not those qualified and entitled to vote, but those qualified and actually voting."

See, also, County of Cass v. Johnston, 95 U. S. 360, 24 L. Ed. 416.

Hence, we see that there is no uniform interpretation of the word "voter."

Section 1 of article 2 of the constitution prescribes the qualifications of an elector. The case of State ex rel. Boyle v. State Board of Examiners, 21 Nev. 67, 24 P. 614, 615, 9 L. R. A. 385, holds that one who possesses those qualifications alone cannot vote. In addition to those qualifications, to be able to vote, one must register in compliance with the statutes regulating registration. In the opinion of this court in the case of State ex rel. Boyle v. State Board of Examiners, supra, this court recognized this to be the correct rule when it held: "These laws [requiring registration] simply provide means for ascertaining and determining in a uniform mode, * * * and are also intended to secure * * * the right of voting."

This language clearly recognizes the necessity of registering before one can become a voter.

In the case of State ex rel. Boyle v. State Board of Examiners, supra, this court had occasion to pass upon section 1 of article 2 of our constitution, and, in so doing, held that the statute requiring electors to register before they were entitled to vote was not an attempt to add to the constitutional qualifications of an elector, but was simply an orderly manner of determining whether the voter possessed the necessary qualifications, and used the following language: "The error of the position lies in the assumption that registration is an electoral qualification. The qualifications of an elector are prescribed by the constitution (section 1, art. 2) and cannot be altered or impaired by the legislature. State v. Findlay, 20 Nev. 198, 19 P. 241 [19 Am. St. Rep. 346]. The registration laws of the state do not attempt to add to these qualifications. These laws simply provide means for ascertaining and

determining in a uniform mode whether the voter possesses the necessary qualifications, and are also intended to secure in an orderly and convenient manner the right of voting."

The statutes regulate registration pursuant to the mandatory provision of section 6, art. 2, of the constitution. In Massachusetts, where there were no provisions in the constitution for registration, the legislature nevertheless enacted them, and in disposing of the question of who was a legal voter the supreme court of that state, in Re Opinion of the Justices, 247 Mass. 583, 143 N. E. 142, 144, said: "Therefore one is not a legal voter unless he possesses all the constitutional qualifications required to entitle one to be a voter and unless also he has become registered as a voter in accordance with the statutes. This is manifest from the fact that even though one possesses all the qualifications prescribed by the constitution as essential to voting, yet he cannot vote unless his name is actually on the voting list as a registered voter."

We are of the opinion that the legislature, in enacting section 1257 N. C. L. 1929, contemplated that the signers to the petition provided for therein, in addition to being a mere elector as provided in the constitution, must have complied with the registration laws, and become a voter. Such was evidently the view taken by this court in the case of State ex rel. Boyle v. State Board of Examiners, supra.

■ We now come to a consideration of the third question, as above designated, raised by respondents' demurrer, namely, Does the petition for a writ of mandate, as presented to this court, state facts sufficient to justify the issuance of the writ as prayed for?

We are of the opinion that this last question must be answered in the negative. The petition, as presented to the council of the city of Reno, and as appears from exhibit C attached and made a part of the petition presented to this court, and which was addressed to the honorable council of the city of Reno and presented to

the said city council as a part of the petition to amend the city charter of the said city of Reno, informed the said council that the sixty percent of the qualified voters whose names appear on the said petition, totaling in number 5,834, was arrived at on the basis of sixty percent of the total vote cast for the office of justice of the supreme court at the last election preceding the filing of the petition, as is provided by section 2580 N. C. L. 1929. We are of the opinion that this is an erroneous calculation, for, if the legislature had intended that the sixty percent be based on the vote cast for the office of justice of the supreme court, rather than on the number of actual qualified voters, as shown by the official register, the legislature would have so stated. Petitioners had no right to rely upon section 2580 N. C. L. 1929, for the reason that said section is a part of a special statute providing for an initiative petition. In this connection, it might be well to observe that the laws of this state contain many different statutes which provide for the filing of petitions with various boards and officers, and each provides for a different basis of arriving at the required number of signers to such petitions, such as the vote cast for governor, the representative in Congress, etc.; and, as argued by counsel for respondents, petitioners had as much right to take as a basis sixty percent of the vote cast for any other officer voted for by the voters of the city of Reno, as they had to take the basis of sixty percent of the vote cast for the office of justice of the supreme court.

Having arrived at this conclusion, it can be readily ascertained that the vote cast for the office of justice of the supreme court at the last November election of 1934 did not even represent the number of qualified voters actually voting within the city limits of the city of Reno. For example, we find by a reference to the official returns of the general election of 1934, as compiled by the secretary of state of the State of Nevada, that the total vote cast by the qualified voters of the city of Reno for the office of justice of the supreme

court was 9,289 votes, and sixty percent of 9,289 would be 5,573.40. Then, if we examine the same record, we find that within the city of Reno the total vote cast for the office of United States senator was 9,985 votes, which shows there were 696 more votes cast by the voters of the city of Reno for the office of United States senator than were cast for the office of justice of the supreme court, and sixty percent of 9,985 votes (as cast for United States senator) is the sum of 5,991 votes; and, since the petitioners inform the city council of Reno, upon filing their petition, that their petition contains only 5,834 signatures after deducting 19 illegible signatures and 13 withdrawals before the petition was filed, which is also shown by the petition presented to this court, by this calculation and without considering sixty percent of the registered voters, the petition, upon its face, shows that the petition was short 145 signatures.

Again, we find from the same record that the number of votes cast at this election for representative in Congress was 9,780, which shows that 491 more votes were cast for the office of representative in Congress than were cast for the office of justice of the supreme court; and again, from the same record, we find there were 10,025 votes cast for the office of governor, which would be 736 more votes cast for the office of governor than were cast for the office of justice of the supreme court.

■ We also find from the petition for writ of mandate, as presented to this court, paragraph 5, line 27, the following language: "That a copy of the six thousand four hundred five (6,405) signatures to the fifty-five (55) petition pamphlets, as aforesaid, is herewith attached and marked 'Exhibit E.' " By reference to the said exhibit E we find that the signers of the petition fail to add to each signature their place of residence, as is expressly required by said subdivision 2 of said section 1257 N. C. L. 1929.

■■ This court has repeatedly held that a board of county commissioners, being an inferior tribunal of

special and limited jurisdiction, could lawfully perform only such acts as are expressly granted by the statutes, and where a board of county commissioners was authorized to act upon a petition which the statute provided must be signed by a certain percent of the voters of the district or county, and the petition failed to show upon its face that it contained the required number of signatures, any action of the board in response to such petition would be absolutely void. See the case of State ex rel. S. T. Swift v. Board of County Commissioners of Ormsby County, 6 Nev. 95; State of Nevada, Appellant, v. Central Pacific Railroad Co., 9 Nev. 79; State of Nevada ex rel. E. Twaddle v. Board of County Commissioners of Washoe County, 12 Nev. 17; Louisa Godchaux v. L. N. Carpenter et al., County Commissioners of Humboldt County, 19 Nev. 415, 14 P. 140; State ex rel. Holley et al. v. Boerlin et al., as the Board of County Commissioners, 30 Nev. 473, 98 P. 402, 403, where this court used the following language: "It is well settled that boards of county commissioners are inferior tribunals of special and limited jurisdiction, and that they can only exercise such powers as are especially granted, and that, when the law prescribes a mode which they must pursue in the exercise of these powers, it excludes all other modes of procedure."

We hold that a board of city council is in the same category as a board of county commissioners and is a body possessed of but limited and special powers, as are especially granted, and that, when the law prescribes the mode which they must pursue in the exercise of such powers, it excludes all other modes of procedure. It, therefore, follows that before the city council in the instant case could lawfully act upon the petition in question the petition, as presented, must show that it contained the necessary number of signers, who were qualified voters, and must further show the petition was exhibited to each of the signers prior to their signature being affixed thereto, and one of the signers, who must be a qualified voter, must swear that

the statements therein contained are true to the best of his knowledge and belief; and from an examination of the petition, as presented to this court, we find that the petition, as presented to the board of city council of the city of Reno, shows that the form of affidavit attached to the petition, as presented to the board of city council, reads as follows:

"Affidavit of Person Soliciting Signatures
"State of Nevada, County of Washoe, ss.

"————————, affiant herein, being first duly sworn, says that affiant is the person who solicited the signatures to the foregoing petition paper; that the number of signatures of such petition paper is ————————; that each of the signatures contained thereon is the genuine signature of the person it purports to be; that affiant believes such persons are electors of the City of Reno, Nevada, and that they signed such petition paper in the presence of affiant with knowledge of the contents thereof.

"————————————————————————

"Sworn to before me and subscribed in my presence this————day of————, 1934.

"————————————————, Notary Public,
"Washoe County, Nevada."

It will be noted that this affidavit is defective in the following respects: That it does not show that the person making the affidavit was himself a signer of the petition, and shows no more than that he solicited the signatures, when the statute (Comp. Laws 1929, sec. 1257, subd. 2) expressly provides: "One of the signers of each such petitions shall swear that the statements therein made are true to the best of knowledge and belief." The certificate is further defective in that the affiant states that he believes that such persons (signing the petition) are "electors" of the city of Reno, Nevada, instead of being "qualified voters," as required by the statute. A person may be an elector, that is, he may possess all of the constitutional requirements entitling him to vote, yet, as hereinbefore pointed out, an elector would not be a qualified voter until he

had registered as required by the registration laws of this state and caused his name to be placed upon the official list of registered voters.

There are other questions raised by respondents' demurrer, but, we feel, in view of the conclusion here reached, namely, that the petition is insufficient to justify the issuance of the writ as prayed for, it would be unnecessary to decide the other points raised. For the reasons given, it is hereby ordered that the demurrer to the petition be, and the same hereby is, sustained, the alternative writ of mandate dismissed, and the peremptory writ of mandate as prayed for be, and the same hereby is, denied, with costs to respondents.

NOTE—DUCKER, C. J., having disqualified himself, the Governor designated Hon. JAMES DYSART, Judge of the Fourth Judicial District Court, to sit in his place and stead.