TONY FIANNACA, PETITIONER, v. E. E. GILL, CITY CLERK OF THE CITY OF RENO, NEVADA, RESPONDENT; JOHN MARSHALL, SR., INTERVENOR.

No. 4522

T. L. WITHERS, PETITIONER, v. E. E. GILL, CITY CLERK OF THE CITY OF RENO, NEVADA, RESPONDENT; BUD BAKER, INTERVENOR.

No. 4523

NELSON B. NEFF, PETITIONER, v. E. E. GILL, CITY CLERK OF THE CITY OF RENO, NEVADA, RESPONDENT; GEORGE CARR, INTERVENOR.

No. 4524

June 22, 1962                                372 P.2d 683

*John C. Bartlett* and *H. Dale Murphy,* of Reno, for Petitioners.

*Roy Lee Torvinen,* City Attorney, and *Richard Breitwieser,* Assistant City Attorney, of Reno, for Respondent.

*Stewart, Horton & McCune,* and *Donald Stuart Bab,* of Reno, for Intervenor John Marshall, Sr.

*Sidney W. Robinson,* of Reno, for Intervenor Bud Baker.

*Peter Echeverria,* of Reno, for Intervenor George Carr.

## OPINION

By the Court, McNAMEE, J.:

Three separate proceedings were filed herein, each seeking a writ of mandate to require the Reno city clerk to call a special election for the recall of city councilmen George Carr and John Marshall, and city mayor Bud

Baker. Said councilmen and mayor were permitted to intervene.

The pleadings are identical except as hereinafter noted. It appears therefrom that on March 12, 1962 the petitioners for recall were residents of and registered voters in Reno, Nevada, and as to the councilmen, the petitioner in each case was a qualified voter in the particular ward from which the councilman was elected. On March 12, 1962, there were filed with respondent city clerk at his office three petitions, each demanding the recall of one of said intervenors. The said petitions for recall consisted of numerous copies or series of copies bound together, each printed copy containing a verification of a person who was a registered voter and elector of the city of Reno. The Baker petition for recall consisted of 185 printed forms containing 6,451 signatures, of which 5,466 compared favorably with the signatures on file in the city of Reno Official Register of Voters. The Carr petition for recall consisted of 35 printed forms containing 1,082 signatures, 880 of which compared favorably with those on file in Ward 1 of the city of Reno. The Marshall petition for recall consisted of 51 printed forms containing 1,467 signatures, of which 1,122 compared favorably with those on file in Ward 6 of the city of Reno.[1] Some of the verifications on the various sections above referred to were not made by an individual who had signed that particular section or copy of the recall petition, but each verifier had signed the petition for recall with the exception that one copy of the Marshall petition was not verified by a person who had signed that petition for recall.

The form of the verification attached to each copy of the petitions for recall were identical and state: "_____ _____, being first duly sworn, deposes and says: That the undersigned is one of the signers of the attached petition; that said petition was exhibited to each of the signers prior to the signature being affixed

_____

[1]The pleadings do not positively allege that the signatures "compared favorably," but rather allege that they compared favorably "according to the certification of H. K. Brown, County Clerk and ex-officio Registrar of Voters."

thereto; that each signature to the paper appended is a genuine signature of the person whose name it purports to be; and swears that the statements therein made are true to the best of the undersigned's knowledge and belief."

None of the petitions for recall alleges the number of signatures required under the constitution or statutes for a petition for recall.

Nev. Const., art 2, sec. 9, provides in part as follows:

"Every public officer in the State of Nevada is subject, as herein provided, to recall from office by the qualified electors of the state, or of the county, district, or municipality, from which he was elected. For this purpose not less than twenty-five per cent (25%) of the qualified electors who vote in the state or in the county, district, or municipality electing said officer, at the preceding election, for justice of the supreme court, shall file their petition, in the manner herein provided, demanding his recall by the people. * * * If he shall not resign within five (5) days after the petition is filed, a special election shall be ordered to be held within twenty (20) days after the issuance of the call therefor, in the state, or county, district, or municipality electing said officer, to determine whether the people will recall such officer. * * * Such additional legislation as may aid the operation of this section shall be provided by law."

Pursuant to said constitutional provision, NRS 306.020 and 306.030 were enacted. The former provides:

"1.   For the purpose of recalling any public officer, there may be filed with the office with whom the petition for nomination to such office is required by law to be filed a petition signed by electors who voted in the state, or in the county, district or municipality electing such officer, equal in number to 25 percent of the votes cast in the state, or in the county, district or municipality, for the office of justice of the supreme court at the last preceding election.

"2.   The petition shall also contain the residence addresses of the signers * * *."

NRS 306.030 provides:

"The petition shall consist of any number of copies thereof, identical in form with the original, except for the signatures and residence addresses of the signers. Every copy shall be verified by at least one of the signers thereof, who shall swear or affirm, before an officer authorized by law to administer oaths, that the statements and signatures contained in the petition are true."

The respondent and the intervenors have raised the following objections to the granting of the writs of mandate:

1. Petitions containing the required number of signatures were not verified by at least one of the signers thereof.

2. The verifications of the petitions were made on "knowledge and belief," a form not prescribed by said statutes.

3. The certificate by county clerk Brown is a nullity because (a) it is executed by a person other than the city clerk, (b) it does not purport to authenticate the genuineness of the signatures on the recall petitions, but merely states that they "compared favorably" with the signatures on the original affidavits of registration, and (c) it cannot be determined therefrom whether the signatures are those of persons who voted in the district or municipality electing the particular officer who is the subject of the recall petition or whether the signatures in part are those of persons who registered subsequent to the preceding election wherein said officers were elected.

4. The sponsors of the recall movement have created a situation which prevents the respondent clerk from determining the validity of the signatures on the recall petitions, because in December 1961, there was initiated in the Second Judicial District Court of the State of Nevada, in and for the County of Washoe, a proceeding wherein that court entered its order directing the city clerk of the city of Reno to deliver the returns including the names of those who voted in the primary and general elections of 1959 to the county clerk, and that pursuant to said order all of said records were removed from the

city clerk's office and deposited with the county clerk; that on February 7, 1962, a second proceeding was initiated in said court wherein declaratory relief was sought regarding the proper procedure for recall. In this latter proceeding, various copies of the recall petitions were deposited with the county clerk for comparison by the county clerk with the signatures of the registered voters on file in his office. The various copies of said recall petitions on March 12, 1962 were finally filed with the respondent clerk, together with said certification of the county clerk, and it was sought thereby to compel the city clerk to call a special election, notwithstanding the fact that the city clerk was a defendant in said declaratory judgment proceeding which recognized that doubts existed with reference to recall procedures. The last pleading in said declaratory judgment proceeding was filed on March 26, 1962. No further action has been taken therein. On May 14, 1962, the three petitions for writ of mandate were filed in this court.

5. It is also contended that writs of mandamus should not issue because petitioners have a plain, speedy, and adequate remedy in the ordinary course of the law.

It is necessary to consider only respondent's and intervenors' first objection.

Although it is impossible for this court to determine from the records before us how many signatures of qualified voters were necessary to require the calling of a special election, it does appear with respect to each of the petitions for recall that if the copies of the recall petitions which were verified by one who was not a signer thereof were disregarded, the remaining copies would not contain enough signatures to require a recall election.

Each of the petitions for recall contains a number of copies thereof identical in form except for the signatures and residence addresses of the signers. It is impossible to ascertain what person or persons circulated the petitions for signatures. We cannot ascertain whether the verifiers of the various copies were likewise the circulators of the particular copy. It does appear, however,

that NRS 306.030 requires that the verifier of a copy of the petition must be one of the signers thereof. This is clear and needs no construction. We cannot accept petitioners' contention that where a number of copies are attached together and one signer of one copy verifies that copy, this satisfies the requirements of the statute as to all such joined copies. Each copy of the petition contains three pages in blank and each of these pages contains spaces for the signatures of 35 registered voters and their residences. In other words, if a signer of the particular copy, as the circulator thereof, was able to obtain more than 105 signatures it would be a simple matter to insert one or more signature pages in that particular copy of the petition in order for his verification to apply to all of the signatures. On the other hand, if he signs one copy of the petition and properly verifies the same, he cannot truthfully verify other petitions which do not contain his signature where the verification recites under oath that he is one of the signers thereof.

In Buohl v. City of Beverly, 89 N.J.L. 378, 98 A. 270, the court said:

"The statute requires that one of the signers of each paper constituting the petition shall make an oath that each signature to the paper appended is a genuine signature of the person whose name it purports to be. * * * In the present case there are four papers. One of them, containing 78 names out of the total of 171 is verified only by the affidavit of one who did not sign the paper itself. Without this paper, there are not enough signatures to comply with the statute. This is fatal to the application."

In Caton v. Frank, 56 Nev. 56, 44 P.2d 521, this court construed a statute which provided for the amendment of a city charter on petition signed by 60 percent of the qualified voters. The statute provided that one of the signers of each such petition should swear that the statements therein made are true to the best of knowledge and belief. The verification of the petition in that case did not show that the person making the affidavit was himself a signer of the petition. This court held

that the verification was defective in that respect and that for this and other reasons the petition to amend the city charter was insufficient to justify the issuance of a writ of mandamus as prayed for.

In the present case, although the affidavit recites that the verifier is one of the signers thereof, this recital is untrue and, therefore, the reasoning in Caton v. Frank, supra, would be applicable herein.

In the case of In re Opinion of the Justices, 114 Maine 557, 95 A. 869, the Supreme Judicial Court of Maine answered certain questions propounded by the governor concerning verification of referendum petitions. Under the constitution of that state written petitions were required to be verified as to authenticity of the signatures by the oath of one of the petitioners certified thereon. The court there said, "It is clear, we think, that in order to warrant the counting of the names on the petition * * * it must contain the verification of the authenticity of the signatures by the oath of one of the petitioners." The following questions and answers appear in the opinion:

"Should names be counted if attached to petitions where the town clerk has certified that the names of the petitioners appear on the voting list of his city, town, or plantation as qualified to vote for Governor, but the signatures to which petitions are not verified as to authenticity by the oath of any petitioner certified thereon? Answer: We answer in the negative.

"In certain cases it appears that the verifying petitioner did not sign the petition as a petitioner, which he verifies, but did sign some other petition. In such case shall the names on the petition verified by him be counted? Answer: We answer in the negative.

"Would it affect the counting of names on petitions just described if the verifying petitioner, although failing to sign the petition as a petitioner, which he verified, sign a similar petition as a petitioner in the same town or city; such latter petition being properly certified by the town clerk? Answer: We think the verification of a petition must be by a petitioner whose name is upon the petition verified.

"Can the names on the petition be counted where the name of the verifying petitioner does not appear on any petition? Answer: We answer in the negative.

"Can a verifying petitioner who failed to sign the petition by inadvertence, but did sign as verifying petitioner, and his verification was duly taken by the magistrate, be regarded as a petitioner as to entitle the names of the petitioners to be counted? Answer: We answer in the negative." See also Dawson v. Meier, 78 N.W.2d 420 (N.D. 1956); Newman v. Secretary of the Commonwealth, 339 Mass. 749, 162 N.E.2d 291.

The case of Whittemore v. Seydel, 74 Cal.App.2d 109, 168 P.2d 212, cited by petitioners, is not in point. That case was decided under a self-executing section of the California constitution. The court there held that although the affidavits attached to a referendum petition were insufficient under the applicable statute, they did not vitiate the petition, because it was not denied that the petition was signed by the requisite number of qualified electors who had themselve complied with all statutory requirements to make their petition effective. The same situation existed in the case of Truman v. Royer, 189 Cal.App.2d 240, 11 Cal.Rptr. 159.

We therefore conclude that none of the petitions for recall contains the number of valid signatures required under the provisions of NRS 306.020 and NRS 306.030.

The petitioners herein maintain, however, that even if the requirements of the statutes (NRS 306.020 and 306.030) were not complied with, it would not be fatal to the petitions for recall because such requirements do not constitute "additional legislation as may aid the operation of" sec. 9, art. 2 of the Nevada Constitution, but in fact constitute a burden on the operation of such constitutional provision. We do not agree. In our opinion, any statutory provision intended to safeguard the operation of recall procedures aids in the operation thereof.[2] See Dawson v. Meier, supra.

In concluding that the petitions for recall are inadequate for the reasons above-stated, we are not holding

[2]Petitioners admitted at the oral argument that a statutory provision designed to prevent fraud would not be objectionable.

that this court will issue a writ of mandamus where material factual questions are presented which properly can be decided only in a district court and where, as in this case, a suit for declaratory judgment has been pending for a considerable period of time in the District Court of Washoe County which could determine adequately questions of both fact and law.

Each of the petitions for the alternative writ is denied and the proceedings herein are dismissed.

BADT, C. J., and COLLINS, D. J., concur.

THOMPSON, J., being disqualified, the governor commissioned Honorable Jon R. Collins, Judge of the Seventh Judicial District, to sit in his stead.