HAROLD ANDERSON, Appellant, *v.* N. V. TRANSANDINE HANDEL-MAATSCHAPPIJ et al., Respondents.

THE STATE OF THE NETHERLANDS, Respondent.

Argued April 13, 1942; decided July 29, 1942.

The following question was certified:

"Did the Netherlands Royal Decree of May 24, 1940 operate to bar the levy of an attachment by the plaintiff subsequent to the enactment of said decree on property in this State belonging to the defendants when said decree was enacted, and the title to which was declared by said decree to be thereby vested in the State of the Netherlands? "

*John Schulman, Arthur Garfield Hays, Morris Shilensky, Milton Sargay* and *Rene Loeb* for appellant. The Netherlands decree in its effect upon creditors of the defendant must be considered con-

fiscatory and therefore contrary to the public policy of New York. (*Sutherland* v. *Bradner*, 116 N. Y. 410; *Cullin* v. *Alvard*, 44 Misc. Rep. 485, 111 App. Div. 911, 188 N. Y. 574; *Sliosberg* v. *New York Life Ins. Co.*, 244 N. Y. 482; *Vladikavkazsky Ry. Co.* v. *N. Y. Trust Co.*, 263 N. Y. 369; *Matter of People* [*Title & Mortgage Guarantee Co.*], 264 N. Y. 69; *Home Building & Loan Assn.* v. *Blaisdell*, 290 U. S. 398.) The implementation of the Netherlands decree is inconsistent with the public policy of this State and is not required under any rule of comity. (*Barth* v. *Backus*, 140 N. Y. 230; *Matter of Waite*, 99 N. Y. 433; *Martyne* v. *American Union Fire Ins. Co.*, 216 N. Y. 183; *James & Co.* v. *Second Russian Ins. Co.*, 239 N. Y. 248; *Oliner* v. *American-Oriental Banking Corp.*, 252 App. Div. 212; 277 N. Y. 588; *Mertz* v. *Mertz*, 271 N. Y. 466; *Griffin* v. *McCoach*, 313 U. S. 498; *Loucks* v. *Standard Oil Co.*, 224 N. Y. 99; *Hutchison* v. *Ross*, 262 N. Y. 381; *Dougherty* v. *Equitable Life Assur. Society*, 266 N. Y. 71; *The Western Maid*, 257 U. S. 419; *United States* v. *Manhattan Co.*, 276 N. Y. 396; *Oetjen* v. *Central Leather Co.*, 246 U. S. 297; *The Navemar*, 102 Fed. Rep. [2d] 444; *Holzer* v. *Deutsche Reichsbahn-Gesellschaft*, 277 N. Y. 474; *Commission for Polish Relief* v. *Banca Nationala A. Rumaniei*, 262 App. Div. 543.) The circumstance that the State Department took official cognizance of the Netherlands decree does not preclude judicial inquiry into its effect upon the property or the rights of creditors in this State. (*United States* v. *Pink*, 315 U. S. 203; *Ulen & Co.* v. *Bank Gospodarstwa Krajowego*, 261 App. Div. 1; *Hannes* v. *Kingdom of Rumania Monopolies Institute*, 260 App. Div. 189; *Lamont* v. *Travelers Ins. Co.*, 281 N. Y. 362.)

*Jay Leo Rothschild* and *Louis Rivkin*, appearing specially for respondents. Since legal title to the property upon which levies were attempted is not in the defendants or any of them, it cannot be the subject of levy. (*Koninklijke* v. *Chase Nat. Bank*, 177 Misc. Rep. 186; *United States* v. *Belmont*, 301 U. S. 324; *United States* v. *Pink*, 315 U. S. 203; *United States* v. *Manhattan Co.*, 276 N. Y. 396; *Compania Espanola de Navegacion Maritima S. A.* v. *The Navemar*, 303 U. S. 68; *Lamont* v. *Travelers Ins. Co.*, 281 N. Y. 362; *Sullivan* v. *State of Sao Paulo*; 36 Fed. Supp. 503; 122 Fed. Rep. [2d] 355; *Stoehr* v. *Wallace*, 255 U. S. 239; *Schrijver* v.

*Sutherland,* 19 Fed. Rep. [2d] 688; *American Surety Co.* v. *Kasco Mills, Inc.,* 149 Misc. Rep. 10; 237 App. Div. 880; 262 N. Y. 585.)

*Allen W. Dulles, Philip L. Miller* and *Henry P. de Vries* for the State of the Netherlands, respondent. The Netherlands decree is a valid act of the State of the Netherlands, and is intended to cover the property sought to be attached. (*Guaranty Trust Co.* v. *United States,* 304 U. S. 126; *Oetjen* v. *Central Leather Co.,* 246 U. S. 297.) By comity, rights acquired under foreign law should be recognized and enforced in our courts unless to do so is against the public policy of the forum. (*Bank of Augustus* v. *Earle,* 38 U. S. 519; *Hilton* v. *Guyot,* 159 U. S. 113; *The Athanasios,* 228 Fed. Rep. 558.) There is no general public policy, either of the United States or of the State of New York, against legislation by a recognized foreign state vesting title in such foreign state to property of its nationals in the United States or in this State. (*United States* v. *Belmont,* 301 U. S. 324; *United States* v. *Manhattan Co.,* 276 N. Y. 396.) The Netherlands decree is in conformity with the manifested legislative and executive policy of the United States and of this State. (*Hines* v. *Davidowitz,* 312 U. S. 52; *Koninklijke Lederfabriek "Oisterwijk" N. V.* v. *Chase Nat. Bank,* 177 Misc. Rep. 186; 263 App. Div. 815.) It is not against the public policy of this State to enforce the decree as against the plaintiff. (*Clark* v. *Williard,* 292 U. S. 112; 294 U. S. 211; *Matter of People* [*Norske Lloyd Ins. Co.*], 242 N. Y. 148; *Home Building & Loan Assn.* v. *Blaisdell,* 290 U. S. 398; *Matter of People* [*Title & Mortgage Guarantee Co.*], 264 N. Y. 69.)

*Mathias F. Correa, United States Attorney (Francis M. Shea, Assistant Attorney-General* and *Sidney J. Kaplan, Special Assistant to Attorney-General,* of counsel), for United States of America.

LEHMAN, Ch. J. The plaintiff in his complaint alleges that he is the assignee of Martin Tietz; that on or about April 26, 1940, April 30, 1940 and May 9, 1940, the corporate defendant at the instigation and with the assistance of the individual defendants converted securities and moneys owned by Tietz and which Tietz had delivered to the corporate defendant. The complaint demands judgment for the sum of $48,394.38 as damages for the alleged conversion.

The plaintiff is a resident of this State; the defendants are residents of Amsterdam, in the Netherlands, and subjects of the State of the Netherlands. The cause of action arose outside of the State and plaintiff's assignor is a non-resident alien. On July 25, 1940, the plaintiff obtained a warrant of attachment against the property of the defendants. The Sheriff served the warrant upon persons or corporations in this State holding, for safekeeping, corporate stocks and bonds which, it is claimed, belong to the defendants or some of them. By such service the Sheriff has attempted to levy upon such property and upon deposits of funds in ordinary banking, checking or brokerage accounts in the name or names of the defendants. Thereafter the plaintiff obtained an order directing service of the summons herein by publication pursuant to the provisions of section 232 of the Civil Practice Act.

The defendants named in the summons and complaint appeared specially and, upon an order to show cause, moved to vacate and set aside the warrant of attachment and any levies made thereunder, and to vacate and set aside the attempted service upon the defendants by publication. In affidavits filed in support of their motion, the defendants challenged on several grounds the validity of the warrant of attachment. They also challenged the attempted levies under that warrant on the ground that by a decree of the lawful government of the State of the Netherlands promulgated on May 24, 1940, title to the property and funds which the Sheriff has sought to attach is " vested in the State of the Netherlands, as represented by the Royal Netherlands Government, temporarily resident in London."

While the motion to dismiss made by the defendants was pending, the court made an order permitting the State of the Netherlands " to appear specially by a motion to vacate the attachment heretofore issued herein and the levies under said attachment." The State of the Netherlands asserts that it holds title to the property of the defendants in this State. The decree promulgated on May 24, 1940, provides in article I that:

" 1) Title to claims against persons, partnerships, companies, corporations, firms, institutions and public bodies, which claims belong to natural or legal persons domiciled in the Kingdom of the Netherlands, * * * in so far as these claims are in any form

whatsoever capable of being encumbered, pledged, transferred or sold or the like, outside of the Realm in Europe, is hereby vested in the State of the Netherlands, as represented by the Royal Netherlands Government, temporarily resident in London and exercising its functions there  *  *  *."

" 2)  *  *  *

" 3) The proprietary rights vested in the State of the Netherlands, by virtue of the provisions of the preceding paragraphs, shall only be exercised for the conservation of the rights of the former owners." The State Department certified that: " The Government of the United States continues to recognize as the Government of the Kingdom of the Netherlands the Royal Netherlands Government, which is temporarily residing and exercising its functions in London." The question presented upon the motion of that government to vacate the attempted levy upon property to which that government claims title under the decree which it has promulgated, concerns solely the construction and effect of the decree.

At Special Term Mr. Justice SHIENTAG, in a scholarly opinion, sustained the claim of the Royal Netherlands Government, and the Appellate Division has unanimously affirmed the order granting the motion to vacate.  The Appellate Division granted leave to appeal, certifying the following question: " Did the Netherlands Royal Decree of May 24, 1940, operate to bar the levy of an attachment by the plaintiff subsequent to the enactment of said decree on property in this State belonging to the defendants when said decree was enacted, and the title to which was declared by said decree to be thereby vested in the State of the Netherlands? "

The answer to that question is decisive of the validity of the *levy* upon the property to which the State of the Netherlands claims title; it is not entirely clear that the answer will determine whether the warrant of attachment is also invalid and should have been vacated.  No such distinction was, however, urged by the plaintiff in the courts below, and it is not urged by the plaintiff upon this appeal.  For that reason we could not consider any such question upon this appeal even if the scope of review of the order were not limited by the form of the certified question.  If the order is too broad, relief must be sought by a motion in the courts below to resettle it.

The certification by the State Department that the Government of the United States has recognized the Royal Netherlands Government in England as the government of the State of the Netherlands constitutes a determination of *political* questions concerning the legitimacy of that government and its decrees. (*Guaranty Trust Co.* v. *United States*, 304 U. S. 126.) The scope and the effect within this State of a decree promulgated by the recognized government are judicial questions, just as the scope and effect of the law of any long-established and recognized friendly foreign government, like that of England, would be judicial questions. The certification was not intended to withdraw from the court jurisdiction or right to determine those questions, just as it would decide other judicial questions, without advice or suggestion from the political branch of the government.

While the appeal from the order of the Appellate Division was pending in this court the Department of State sent to the chief judge of the court a letter stating: " Since the entry of the United States into the present war and the signing of the Declaration of the United Nations, the Department has undertaken to formulate the policy of the United States with reference to the effectiveness of the said decree of May 24, 1940. In view of the formulation of policy which has now been made, the Department of State intends to ask the Attorney-General to make formal representation to your Court, setting forth that policy." Accordingly, the United States Attorney for the Southern District of New York applied at the direction of the Attorney-General of the United States to this court for leave to appear and file " a Suggestion of the Interest of the United States in the Matter in Litigation," bringing to the attention of the court the formulation by the State Department of its policy in respect to the effect to be given to the decree of the foreign State. Upon that application the United States Attorney stated that " in the interest of orderly procedure " the matter is being presented by motion for leave to file the suggestion, though he questioned whether leave of the court is necessary. Without considering or deciding whether leave is necessary, the court granted leave.

The suggestion filed by the United States Attorney states:

" I. The United States has an interest and concern in the subject matter and outcome of this action insofar as there is involved

the question of the effect on assets within the United States of the decree of May 24, 1940, of the Royal Netherlands Government, purporting to affect title to certain assets of nationals of the Netherlands. That interest arises from certain policies of the Government of the United States in the conduct of its international relations, which policies have been determined by the executive branch of the government of the United States and should be given effect.

" II. The Attorney-General of the United States has received from the Honorable Cordell Hull, Secretary of State of the United States, a communication dated February 10, 1942, a certified copy of which is hereto annexed, wherein the Secretary of State requests that there be brought to the attention of this Court the position of the Department of State relating to the effect of the Decree of May 24, 1940, of the Royal Netherlands Government. The Attorney-General has directed the undersigned to bring said communication to the attention of this Court, as the Secretary of State has requested.

" III. As appears from said communication, at the time of the adoption of the Decree of May 24, 1940, the Royal Netherlands Government was recognized by the Government of the United States, and the Government of the United States has consistently taken cognizance of that Decree as an act of the Royal Netherlands Government; and an expression of that cognizance was embodied in a letter to the Secretary of the Treasury under date of June 27, 1940, an authenticated copy of which is appended to the communication of the Secretary of State. However, as the Secretary points out, prior to the entry of the United States into the present war and to the signing of the Declaration of the United Nations, the Government of the United States did not adopt any policy with reference to the effect which should be given to that Decree on assets within the United States; and pending the adoption of such a policy by the Government of the United States, the Department of State considered that the effect, if any, of that Decree on assets within the United States was a matter to be determined by the courts of competent jurisdiction.

" IV. It appears from the opinion of the Supreme Court of the State of New York herein (28 N. Y. Supp. [2d] 547, at pp. 553, 558) that that court gave to the expression of cognizance of June

27, 1940, a construction broader than was intended, apparently finding in it a determination by the executive branch of the Government relative to public policy (Ibid p. 553) and holding that the Decree, ' implemented by the recognition given to it by our national government, is self-executing ' (Ibid p. 558). On the contrary, as set forth in the Secretary's communication annexed hereto, the recognition was merely of the Royal Netherlands Government, and of the Decree as an act of that Government without the adoption at that time of any policy with reference to the effect which should be given to that Decree on assets within the United States, leaving that question, pending the adoption of such a policy, for judicial determination.

" V. The Secretary points out, however, that since the entry of the United States into the present war and the signing of the Declaration of the United Nations, the Government of the United States has adopted a policy with reference to the particular question presented by this case. That policy, as announced by the Secretary, is as follows:

' It is the policy of the United States that effect shall be given within the territory of the United States to that Decree insofar as it is intended to prevent any person from securing an interest in, or control over, assets of nationals of the Netherlands located in the United States on account of claims arising outside of the United States in territory now or at any time under the jurisdiction of the Netherlands Government, for the benefit of persons who are not at the time of their assertion citizens or residents of the United States.'

" VI. The foregoing statement of policy is made with express reservation by the Secretary of State, as follows:

' This statement reserves for further determinations of policy, in the light of further consideration and developments, all questions relating to the effectiveness of the Decree as applied to other circumstances or persons and relating to the bearing of control which the Government of the United States may undertake through its executive and legislative branches to exercise over any assets purported to be affected by the terms of that Decree.'

" VII. The Secretary of State, as shown by said communication, finds that the result of the decision of the Supreme Court of the State of New York, as affirmed by the Appellate Division, is in

harmony with and will promote the policy of the United States, but the Secretary expressly refrains from expressing any views as to the compatibility with that policy of all the reasons stated in the opinion of the Supreme Court of the State of New York. The Secretary points out that it would be highly desirable that this Court, in deciding the present case, confine itself to giving effect to the announced policy of the United States stated in that communication without expressing any view with respect to the effectiveness of the Decree as applied to persons and circumstances other than those referred to in the statement of policy set forth in that communication.

" VIII. It is submitted that the policy announced by the Department of State, if given effect, is dispositive of the controlling issues herein. As appears from the opinion of the Supreme Court of the State of New York (28 N. Y. Supp. [2d] 547, 550), the plaintiff, although a resident of the State of New York, is what is commonly known as an assignee for collection, the alleged assignment to him having been made solely for the purpose of making him, instead of his assignor, the plaintiff in the action, and that the plaintiff's assignor is a non-resident alien, a citizen of a country in Europe said to be Liechtenstein, and is now understood to be resident in Cuba. It further appears from said opinion that the plaintiffs alleged cause of action arose outside of the United States in territory under the jurisdiction of the Netherlands Government.

" IX. The Secretary's communication points out that while no view is expressed as to the compatibility with the policy of the United States of all the reasons stated in the opinion of the Supreme Court of the State of New York, should occasion arise wherein it is desirable to announce a policy of the United States bearing on those reasons, the Department of State will be pleased to undertake such a statement, but that the present case presents no such occasion. Should, contrary to this submission, the Court hold that the policy announced by the Secretary of State is not full enough to dispose of the controlling issues herein presented and that the questions reserved by the Secretary of State need be determined in order to dispose of this case, it is respectfully requested that an opportunity be afforded the Secretary of State to announce the policy, if any, of the United States, bearing on those questions, prior to the disposition of this cause."

There can be no doubt that the decree of May 24, 1940, promulgated by the recognized government of the State of the Netherlands is part of the law of a friendly sovereign State of which the defendants are subjects and in which the defendants are domiciled, and that under such law title to the property described in the decree belonging to the nationals and residents of the State of the Netherlands (including the property upon which the Sheriff has attempted to levy) is vested in the State of the Netherlands. By comity of nations, rights based upon the law of a foreign State to intangible property, which has a situs in this State, are recognized and enforced by the courts of this State, unless such enforcement would offend the public policy of this State. That rule is part of the law of this State, as it is, in general, the law of all countries which accept the reign of law. The question which the courts below were called upon to decide is whether the sequestration by the government of the State of the Netherlands of property here belonging to its own nationals offends our public policy.

Argument may be made that *confiscatory* decrees of foreign countries offend the fundamental rule upon which our economic and social system rests, that no person may be deprived of his property without due process of law and upon payment of fair compensation. Here the challenged decree does not in purpose or effect violate that rule. Under its terms, the State becomes in effect a trustee for its subjects of their property which might otherwise be without protection and perhaps subject to seizure by a ruthless enemy. By article V of the decree it is provided that: " Three months after the present emergency conditions shall in Our judgment have ceased to exist, restitution shall be made of the claims mentioned in Article I to the former owners." The " emergency conditions " were created by the invasion of the Netherlands by a foreign enemy. The decree is in part designed to prevent such property from falling into the hands of the enemy of the Netherlands for use in prosecuting the war. That enemy is now our enemy. A decree designed for such purposes and having such effect may hardly be said to offend a public policy of this State.

The plaintiff does not, indeed, claim seriously that it offends the public policy of the State, except to the extent that it excludes a resident creditor of a foreign debtor from resort to property of the debtor within the State for satisfaction of the debt. He seeks

support for his contention in the decision of this court in *Barth* v. *Backus* (140 N. Y. 230). The limits of the application of the rules and principles there stated have been defined in *Martyne* v. *American Union Fire Ins. Co.* (216 N. Y. 183). The situation here presented does not fall within those limits. We agree with the courts below in their determination of the *judicial* question that the decree of the Government of the Netherlands is valid and bars a levy upon the property. The effect of that decree is not merely to " freeze " the property of the debtor. It divests the debtor of all title to the property.

We need not consider now whether the Department of State by " formulation " of its public policy as to the effect of the decree could change the judicial question determined by the court below into a " political question " which the courts are not empowered to decide or whether the Department of State can in that manner create a public policy of the United States which supersedes and renders immaterial any public policy of a State. We recognize that the political departments of the United States Government may do so where enforcement of the public policy of a State might render ineffective a transfer of property within the State in accordance with an agreement entered into by the United States, in the exercise of powers conferred by the Constitution of the United States, with a recognized foreign government vested with title to the property by its own decree. ( *United States* v. *Pink*, decided February 2, 1942, 315 U. S. 203.) An answer to the question whether the courts must give effect to the mere *formulation* of a public policy by the State Department in respect to the effect of a decree of a foreign State relating to property within a State, regardless of whether such decree offends the public policy of the State, might involve very serious consequences in other cases. It can have no consequence where, as here, the public policy so formulated accords with the public policy of the State. For that reason we do not now consider or decide the question.

The order should be affirmed, with costs, and the question certified answered in the affirmative.

LOUGHRAN, FINCH, RIPPEY, LEWIS, CONWAY and DESMOND, JJ. concur.

Order affirmed, etc.