UNA E. STEPHENS, APPELLANT, v. FIRST NATIONAL BANK OF NEVADA, ET AL., RESPONDENTS.

No. 3479

June 20, 1947. 182 P.2d 146.

*W. T. Mathews,* of Carson City, for Appellant.

*George L. Sanford* and *Richard R. Hanna,* both of Carson City, for Respondents.

*Miles N. Pike,* U. S. Attorney, of Reno, in pro. per.

## OPINION

By the Court, HORSEY, J.:

The United States attorney for the district of Nevada, pursuant to the direction of the attorney general of the United States, on January 21, 1947, appearing in his proper person, filed in this court a paper or document entitled, "Suggestion of the Interest of the United States in the Matter in Litigation and Motion for Leave to Appear and to Participate in the Litigation for the Protection of the Interest of the United States." In the prayer of the said suggestion and motion, the United States prays:

"1. That your petitioner be permitted to appear in these proceedings and to present, upon proper leave granted, a brief setting forth the points and authorities relied upon by the United States as the obligor of the bonds which are the subject matter of the action, to sustain its contentions regarding the issue of the ownership of said bonds, and to be fully heard on oral argument before this Court, for the purpose of presenting, and attending to, the interest of the United States.

"2. That this Court determine and decree the controlling force and effect of the federal laws and regulations applicable to the ownership of the bonds in question, and render its decision and judgment herein accordingly.

"3. For such other and further relief as justice and equity may require."

If the above-quoted objectives stated in the prayer were the only objectives sought to be accomplished by the appearance, the same could be as readily accomplished by requesting leave to file a brief as amicus curiae, as was done in the lower court. But there are other objectives stated on page 2 of the memorandum of authorities in support of the motion, same being stated as follows: "Participation of such limited character, however, is not deemed sufficient, despite the fact that the United States Attorney accepts the

record on appeal in its present form and does not intend to seek permission to introduce evidence or otherwise interfere with the orderly course of appellate procedure in this Court. It is believed, however, that the appearance of the United States Attorney, at the direction of the Attorney General, to protect the interest of the United States, extends beyond the limited status of amicus curiae, and entitles the United States Attorney to take whatever other steps or proceedings may be legal or proper in the premises for the protection of the interest of the United States. In the instant case, such other contemplated steps or proceedings might include a petition for a rehearing or an appeal from a decision adverse to the interests of the United States."

Summarized, the reasons as stated in the said suggestion of interest, and in said memorandum of authorities, for the motion for leave to appear in the manner and by the method requested, are:

That the decision of the lower court in the instant case, wherein the laws of the State of Nevada as to the ownership and devolution of personal property were applied in the determination of the ownership of certain United States savings bonds involved in the litigation, and registered, under the United States treasurer's rules and regulations, in the names of appellant, Una E. Stephens and of Paul F. Glanzmann, now deceased, as co-owners, is contrary to such rules and regulations of the secretary of the treasury (Treas. Dept. Car. No. 530, 5th Revision), promulgated pursuant to, and under the authority of, the second liberty bond act, as amended. 31 U.S.C.A. sec 757c; that the decision and judgment of the lower court constitute a variance from the uniform national interpretation as to bonds of that character; that the application of the state law in the premises renders the United States unable to fulfill its contractual obligation as to said bonds, and, therefore, that such decision and judgment tends to obstruct and impede the United States in the exercise of its power to borrow

money, and are in contravention and violation of the supremacy clause, article VI, clause 2, of the constitution of the United States.

The United States attorney, in his memorandum of authorities, has set forth verbatim the sections of 5 U.S.C.A., conferring certain authority upon the attorney general and upon the solicitor general of the United States.

5 U.S.C.A. sec. 309, 316, 317, are, respectively, as follows:

Sec. 309. "Conduct and argument of cases by Attorney General and Solicitor General. Except when the Attorney General in particular cases otherwise directs, the Attorney General and Solicitor General shall conduct and argue suits and writs of error and appeals in the Supreme Court and suits in the Court of Claims in which the United States is interested, and the Attorney General may, wherever he deems it for the interest of the United States, either in person conduct and argue any case in any court of the United States in which the United States is interested, or may direct the Solicitor General or any officer of the Department of Justice to do so."

Sec. 316. "Interest of the United States in pending suits. The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in any suit pending in any of the courts of the United States, or in the courts of any State, or to attend to any other interest of the United States."

Sec. 317. "Superintending district attorneys and marshals. The Attorney General shall exercise general superintendence and direction over the attorneys and marshals of all the districts in the United States and the Territories as to the manner of discharging their respective duties; and the several district attorneys and marshals are required to report to the Attorney General an

account of their official proceedings, and of the state and condition of their respective offices, in such time and manner as the Attorney General may direct."

It is by virtue of the authority conferred upon him by section 316 that the attorney general of the United States, acting by the United States attorney for the district of Nevada, moved, by way of suggestion of the interest of the United States, to appear and participate in the pending litigation, in this court.

Section 316 empowers the attorney general to send the solicitor general, or any officer of the department of justice, to any state or district of the United States "to attend to the interests of the United States in any suit pending in any of the courts of the United States, or in the courts of any State * * *."

■ It is obvious that the Congress of the United States, by such authorization of the attorney general, did not intend to invest him with unlimited authority to attend to the interests of the United States in pending suits in any manner, or at any time, or at any stage of the proceedings, in such courts as he might see fit, but contemplated and intended, of course, that such authority should be exercised in obedience to, and in conformity with, the laws and rules of procedure applicable to, and governing, the particular courts in which such suits were pending.

In 54 Am.Jur., sec. 121, p. 630, the rule, or principle, above indicated is set forth as follows: "Sec. 121. Application of General Rules of Procedure.—In the absence of any special statutory provision to the contrary, the United States, when bringing suit for the vindication of its rights, is subject to the general rules of practice and procedure which govern private litigants. The general rule that the United States is not bound by a statute, unless expressly named therein, does not apply to legislative acts which prescribe the general rules of procedure in civil actions. * * *"; citing in support of the text: State of Ohio v. Helvering, 292 U. S. 360, 54 S.Ct. 725,

78 L.Ed. 1307; United States v. Union Pac. R. Co., 105 U.S. 263, 26 L. Ed. 1021; United States v. Thompson, 93 U.S. 586, 23 L.Ed. 982; Green v. United States, 9 Wall., U. S. 655, 19 L.Ed. 806; State ex rel. Hamilton v. Standard Oil Co., 190 Wash. 496, 68 P.2d 1031.

The United States attorney, in said memorandum of authorities, has cited numerous cases from the federal courts, and a few from state courts, in which the attorney general of the United States, acting usually through the United States attorney for the district in which the suit in which he sought to appear was pending, has been permitted to appear, by way of suggestion of the interest of the United States. It appears from the authorities that the cases in which the attorney general, appearing by way of suggestion of the interest of the United States, has been allowed to so appear in the first instance in an appellate court, other than the supreme court of the United States when acting as a court of original jurisdiction and not as an appellate court, are very few indeed. In suits between states, as in State of Florida v. State of Georgia, 17 How. 478, 15 L.Ed. 181, in which the United States asserted an interest in certain lands which would be affected by the determination of the boundary between the two states, the attorney general, on behalf of the United States, was permitted to intervene, by way of suggestion. This was eminently proper, because the United States had a direct, pecuniary interest in the subject matter of the litigation, and the application was timely, being made before trial and while the issues were in the formative stage.

It may be surmised that the principal reason why the United States has not more frequently sought to intervene in appellate courts, state and federal, is that when the issues have been completed and joined, the case tried, and the record completed and brought within the jurisdiction of the appellate court, there is, in the absence of a permissive statute, no power or jurisdiction in an appellate tribunal to change or alter the record of the

case in any material particulars, either by adding parties, or permitting new issues, or otherwise, unless very exceptional circumstances exist. Strict adherence to this principle is essential in order to maintain the integrity (one may say) of appellate jurisdiction; also to prevent appellate courts from transcending their authority, which is commonly constitutionally prescribed, and assuming original jurisdiction which they have no constitutional or statutory power to assume. It may readily be perceived that to sanction such usurpation of authority by appellate courts would destroy the clear line of demarcation between original and appellate jurisdiction. An appellate court, assuming such authority in the absence of constitutional or statutory sanction, would, in the same case, be exercising original jurisdiction as to the new parties and issues, and appellate jurisdiction as to the issues made up in the lower court and properly part of the record on appeal. Such commingling of original and appellate functions would, necessarily and most seriously, not only impair the regularity and orderliness of appellate procedure, but its very integrity, as the record, if the alterations or changes were material as to issues or parties, would be substantially different in the appellate court than in the court from which appeal had been taken. It seems abundantly clear and elementary that any material alteration of the record upon appeal would render impossible a fair appraisal of the decision and judgment of the lower court involved. With new issues or parties added, the appellate court would be passing upon a different appellate structure from that originally certified to it upon appeal, such different structure including matters not before the lower court, and which that court never had an opportunity to pass upon or decide. In other words, error, under such circumstances, could readily be imputed to the lower court in the light of new issues raised by an additional party or parties, which would thus be injected into, or imposed upon the record, and upon which the

lower court had had absolutely no opportunity to adjudge or decree.

The federal case of Roberts v. Calhoun County, Florida, 5 Cir., 137 F.2d 130, cited by the United States attorney, sheds some light upon the scope and effect of an appearance by way of suggestion of the interest of the United States. In that case the United States circuit court of appeals for the fifth circuit, in its per curiam opinion, expressed doubt whether the United States, which had so appeared in the lower court, was so far a party as to be entitled of right to move for a rehearing. And the court was careful, in the opinion, to confine the scope and effect of the appearance of the attorney general, by his subordinate, to that existing by such appearance in the lower court, principally, it is believed, so as to preserve inviolate the integrity of the record, which would have been violated had the United States been permitted, upon appeal, to change the nature of its appearance to that of an actual party. In the instant case, the United States attorney desires to change, upon this appeal, his appearance from that of amicus curiae, merely, in the lower court, to the proposed appearance in this court by way of suggestion of the interest of the United States.

The opinion in Roberts v. Calhoun County, Florida, supra, 5 Cir., 137 F.2d on page 131, is, in part, as follows:

"We doubt whether the United States is so far a party as to be entitled of right to move for a rehearing. It cannot be made a party so as to be bound by a judgment unless a law authorizes it. State of Minnesota v. United States, 305 U.S. 382, 388, 59 S.Ct. 292, 83 L.Ed. 235; Munro v. United States, 303 U. S. 36, 41, 58 S.Ct. 42, 82 L.Ed. 633. But a statute, R.S. sec. 359, 5 U.S.C.A. sec. 309, provides that "The Attorney General may, whenever he deems it for the interest of the United States, either in person conduct and argue any case in any court of the United States in which the United States is interested, or may direct the Solicitor General or any officer

of the Department of Justice to do so." See, also, R.S. sec. 367, 5 U.S.C.A. sec. 316. It appears from a certified copy now filed that this is in fact what was done in the court below, the district attorney being allowed to appear to suggest the interest of the United States, rather than the United States intervening as a party. The courts have always been ready to permit such suggestion and assistance from the attorney general when the United States was not or could not be a party. In the Schooner Exchange, 7 Cranch. 116, 117, 3 L.Ed. 287, the foreign relations of the United States were involved, and the United States attorney was allowed to appear and really conducted the defense of the cause. In State of Florida v. State of Georgia, 17 How. 478, 15 L.Ed. 181, the United States had an interest in land affected by the boundary which was in dispute between the two States, and on full deliberation the attorney general was allowed not only to appear and assist the court by argument, but to introduce evidence and examine the witnesses, yet without making the United States a party or subjecting it to judgment. So in Stanley v. Schwalby, 147 U.S. 508, 13 S.Ct. 418, 37 L.Ed. 259, where officers of the United States were sued for land which was occupied by them for the United States, the district attorney was held entitled to defend the case. Many other instances might be cited. We will treat this motion for rehearing as a continuation of the appearance of the attorney general by his subordinate, rather than a new one by the United States as a party. We welcome any assistance to a correct decision.

"But the appearance is in order to suggest and protect the interests of the United States and not to aid or assist either litigant in the case. Even in a formal suit by the United States to cancel its land patent, if it appears that the object is not to protect an interest of the United States but to aid a private claimant, the suit should fail. United States v. San Jacinto Tin Co., 125 U.S. 273, 8 S.Ct. 850, 31 L.Ed. 747. In the present case,

if the motion for rehearing is not to protect a real interest of the United States, or if it proposes to raise technical objections to the doing of equity and justice, it ought not to be allowed to prevail. * * * We are of opinion that it is not made to appear that the United States has any longer a real interest in the Bond Fund."

The federal cases treat the appearance by way of suggestion of the interest of the United States as an intervention of a special kind, because the United States, in the absence of express legislative authority by Congress, cannot be sued, nor, in the technical sense, be made a party. This question of the status of the United States in private litigation is fully treated in the case of Stanley v. Schwalby, 147 U.S. 508, 13 S.Ct. 418, 37 L.Ed. 259, in the opinion by Mr. Chief Justice Fuller. It is notable that the federal cases frequently designate an application by way of suggestion as an intervention. It is an intervention of a special kind, but nevertheless characterized as an intervention. In Stanley v. Schwalby, supra, 147 U.S. 508, 13 S.Ct. on page 420, 37 L.Ed. on page 261, the language of the learned chief justice is: "We should remark, however, that from a very early period it has been held that even where the United States is not made technically a party under the authority of an act of congress, yet, where the property of the government is concerned, it is proper for the attorney for the United States to *intervene* by way of suggestion." (Italics mine.)

In State of Florida v. State of Georgia, supra, in the able opinion by Mr. Chief Justice Taney, 17 How. 478, 15 L.Ed. on page 190, the appearance by way of suggestion is characterized as "this intervention," in the following sentence: "Nor is this *intervention* of the United States derogatory to the dignity of the litigating States, or any impeachment of their good faith." (Italics mine.)

The next question to be treated, and, it appears, the question really decisive of the motion for leave to appear and to participate, in the first instance in this court, in

the pending litigation, for the protection of the interest of the United States, is: Has this court the jurisdiction and power to allow the motion or to grant the leave sought by the United States attorney, on behalf of the attorney general? In other words, have we the jurisdiction and do we possess the power and authority to allow, or permit, the United States attorney, acting for the attorney general of the United States, to intervene initially in this appellate court, in the mode and manner and for the purposes set forth in the said document filed January 21, 1947, at the request of the United States attorney?

■ Our Nevada courts, as do the state courts generally in the United States, derive their power and jurisdiction from the constitution and laws of the state. In matters of civil practice and procedure the state courts are dependent for their authority upon, and are bound by, the provisions of our civil practice act and such other Nevada statutes as are applicable. Our statute as to intervention is section 64 of the Nevada civil practice act, approved March 17, 1911, same being section 8563, N.C.L.1929, vol. 4, and is as follows: "INTERVENTION, WHEN IT TAKES PLACE, AND HOW MADE.—COSTS. § 64. Any person may, before the trial, intervene in any action or proceeding, who has an interest in the matter in litigation, in the success of either of the parties, or an interest against both. An intervention takes place when a third person is permitted to become a party to an action or proceeding between other persons, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claims of the plaintiff, or by demanding anything adversely to both the plaintiff and the defendant; and is made by complaint, setting forth the grounds upon which the intervention rests, filed by leave of the court and served upon the parties to the action or proceeding who have not appeared, and upon the attorneys of the parties who have appeared, who may answer or

demur to it as if it were an original complaint. The court shall determine upon the intervention at the same time that the action is decided; if the claim of the party intervening is not sustained he shall pay all costs incurred by the intervention."

■ This court has original jurisdiction only as to the issuance of writs of mandamus, certiorari, prohibition, quo warranto and habeas corpus; also all writs necessary or proper to the complete exercise of its appellate jurisdiction. All other jurisdiction of this court is appellate. We have no jurisdiction to try cases, either civil or criminal. That jurisdiction is original, and, in cases of the class of the instant case, is conferred only upon the state district courts. Constitution of Nevada, sec. 4, art. VI, as to the jurisdiction and powers of the supreme court, and sec. 6, art. VI, as to the jurisdiction of district courts, same being, respectively, sec. 112 and sec. 114, N.C.L.1929, vol. 1.

■ Referring again to our intervention statute, supra, same makes provision for intervention "before the trial." This necessarily means that such intervention must be had in the district court, in any case of the same class as the instant case, which is a case involving more than $300. The statute makes no provision for intervention in the supreme court, in any case, at any stage of the proceedings, or at all.

■ Intervention is confined by the statute to "any person * * * who has an interest in the matter in litigation." In the case of Harlan v. Eureka Mining Co., reported in 10 Nev.R. 92, the pith of the opinion, by Mr. Chief Justice HAWLEY, upon the question of what is such an interest as will afford one the right to intervene, occurs on pages 94 and 95 of 10 Nev. as follows: "As a general rule, we think it is well settled that to entitle a person to intervene he must have such an interest in the matter in litigation that he would either gain or lose by the direct legal operation and effect of the judgment

which might be rendered in the suit between the original parties."

Whether the attorney general, acting by the United States attorney, on behalf of the United States, has alleged, in his suggestion of the interest of the United States in the pending litigation, sufficient interest in the matter in litigation within the meaning of our statute as to intervention, it is unnecessary for this court to decide. It is clear that the United States would neither gain nor lose, in a pecuniary sense, as the direct result of the litigation.

■ The obligation of the government of the United States, as the obligor of the bonds involved, would be the same whether the ownership thereof is finally determined to be in the plaintiff, or in the estate, or administrator, of the deceased, Paul F. Glanzmann. But, be that as it may, the fact remains that the pending motion to appear and to participate in the litigation for the protection of the interest of the United States, if permitted, would be, in its nature and effect, an intervention. As has been shown, it has been so designated by the supreme court of the United States upon several occasions, and, we may add, by many other federal courts. Being an intervention to all intents and purposes, and not being filed in the trial court (the First judicial district court, in and for the county of Ormsby) *before the trial,*" or at all, and having been, in the first instance, presented and filed in the supreme court which is without power or jurisdiction to entertain such a motion to intervene, even if we should assume that the interest of the United States in the matter in litigation is sufficient to entitle it to intervene, in the proper tribunal, within the time fixed by the statute, we do not perceive how it is possible for us, within the limitations of our jurisdiction and authority, to entertain the motion. (Italics mine).

We will, however, consider, and cite, a few of the many

authorities available which serve to enlighten as to the state of the law, generally, having relation to the question involved, in its various phases. We believe these authorities, which are in point as to the principles involved, will indicate the correct conclusion.

The United States attorney, it appears, has cited but one case in which the United States has sought to intervene, in the first instance, in an appellate court of a state, by way of suggestion of the interest of the United States. That case is Anderson v. N. V. Transandine Handelmaatschappij, 289 N.Y. 9, 43 N.E.2d 502, in which, while an appeal was pending in the court of appeals of New York, the United States attorney for the Southern district of New York applied, at the direction of, the attorney general of the United States, acting at the instance of the department of state, for leave to make formal representation to the said court as to the formulation by the state department of a policy with reference to the decree of May 24, 1940, of the Royal Netherlands Government, affecting the property of nationals of that government located within the United States. The court granted such leave. It will be noted that the secretary of state found that the result of the decision of the supreme court of the State of New York, 28 N.Y.S.2d 547, as affirmed by the appellate division, 263 App.Div. 705, 31 N.Y.S. 2d 194, was in harmony with the policy of the United States, and that the department, by such suggestion of interest, was not seeking to reverse such results, but merely sought to prevent the court from "expressing any view with respect to the effectiveness of the Decree as applied to persons and circumstances other than those referred to in the statement of policy * * *" [289 N.Y. 9, 43 N.E.2d 506]. And the court of appeals, in considering the matter, stated: "In answer to the question whether the courts must give effect to the mere formulation of a public policy by the State Department in respect to the effect of a decree of a foreign State relating to property within a State, regardless of whether such decree offends the public

policy of the State, might involve very serious consequences in other cases. It can have no consequence where, as here, the public policy so formulated accords with the public policy of the State. For that reason we do not now consider or decide the question."

It is clear that the granting of leave to appear did not introduce into the case any controversial question, and had little, if any, effect.

The question of intervention in cases or proceedings pending in appellate courts is treated in 4 C.J.S., Appeal and Error, sec. 402, p. 865, as follows: "The practice as to the intervention or addition of new parties in an appellate court is not uniform. Intervention is sometimes permitted as an exercise of the inherent power of the court, or because the case falls within a permissive statute. Intervention, under such circumstances, is more frequently allowed where the new party to the appeal was a party to the proceedings below. On the other hand, in the absence of a permissive statute, intervention has been denied, particularly where the new party was not a party to the judgment or decree entered in the court below, and in no way affected by the judgment, or where the intervention raises new issues. It would also seem that a necessary party cannot be added after the expiration of the time for commencing the proceeding in error."

■ From the authorities cited to the above text, and other authorities, it is apparent that, in the absence of a permissive statute, such as does not exist in Nevada, the great weight of authority is opposed to intervention after a case has reached an appellate court. Doubtless this is because same tends toward, if it does not actually produce, a confusion as between original and appellate jurisdiction, occasioned by the introduction of new issues of fact or law by the intervening parties, upon which the lower court has had no opportunity to pass. Frequently, if permitted during the latter stages of an appellate proceeding, it would afford the new party, or parties, the position of appellants long after the time to appeal had

expired, and the bill of exceptions or record on appeal completed, thus lessening the opportunity of the adversary to meet such new issues. It is not conducive to orderly procedure, and, we believe, not contributory to the accomplishment of justice, to allow intervention in the appellate court, other than to accomplish the substitution of parties in the case, because of death or for other good cause, and for like harmless purposes.

In Walter Bledsoe Coal Co. v. Review Board of Employment, etc., Ind.App., 42 N.E.2d 1021, 1022, a motion to amend an assignment of errors, by adding the names of forty-six omitted persons, was granted in the lower court, and the assignment of errors was thus amended. The appellate court set aside the ruling, or order, granting the privilege to amend said assignment, and in that connection stated: "The requirement that all parties to the judgment be named in the assignment of errors is jurisdictional. When parties affected by the judgment adverse to appellants are not before the court, this court has no jurisdiction and is powerless to permit amendment bringing in additional parties after the time for appeal has expired. In re Wiles (In re Gibbs), 1934, 208 Ind. 271, 195 N.E. 572; Harrah v. Lansing State Bank, 1937, 103 Ind.App. 519, 4 N.E.2d 686; Second National Bank of Robinson, Ill. v. Scudder, 1937, 212 Ind. 283, 6 N.E.2d 955; Carpenter v. Amoss, 1934, 99 Ind. App. 286, 192 N.E. 168; Gary State Bank v. Gary State Bank, 1936, 102 Ind.App. 342, 2 N.E.2d 814."

In Scrugham et al v. Shoup et al., 256 F. 325, the circuit court of appeals for the third circuit, in an opinion by Woolley, circuit judge, in considering certain petitions for intervention, on page 327 of 256 F. stated: "An examination of these petitions shows that the questions of law they raise—while related perhaps to the questions in this case—are not predicated on a like state of facts and are not the same questions of law. Being different questions newly raised, we are not required to entertain them on this appeal when they have not been presented to nor passed on by the court below, nor are

we disposed further to involve this complicated case by injecting new questions on the eve of its decision."

In the case of In re Determination of Relative Rights to Use of Waters of Deschutes River, Or., 108 P.2d 276, on page 284, it is stated in the opinion by the supreme court of Oregon: "Application has been made by the City of Redmond for permission to intervene in this appeal. In its petition it asserts that it was not served with notice of the filing of the application by the Broughtons for an extension of time and apparently desires this court to determine whether or not it was served, by considering evidence other than that presented before the state engineer or the circuit court. This is an appellate court and not a court of original jurisdiction except in specified instances, of which this is not one. Therefore, the petition to intervene must be denied."

The case of Guaranty Trust Co. of New York v. Minneapolis & St. L. R. Co., 8 Cir., 36 F.2d 747, was a mortgage foreclosure suit. The Hawley committee, which represented holders of bonds under a refunding and extension mortgage, sought to intervene in the appellate court after the case had been set down for oral argument. The court, in its opinion, on page 762 of 36 F.2d stated: "By final decree the court adjudged that these deposited bonds were existing obligations of the mortgagor secured by this mortgage. The decree is presumed to be sustained by the evidence. The issue, not having been raised in the trial court, cannot properly be urged in this court on appeal. These parties, having sat idly by during the trial, and until after all the appeals were perfected and the time for appeal had expired, are not now entitled to urge this question in this court. They are not appellants, they have filed no assignments of error in the lower court, and the time for appeal had expired before they applied for leave to intervene in this court. To permit questions of such grave importance to be so raised would demoralize and make impossible the orderly conduct of litigation. The intervention should be dismissed."

310

In Vaughan et al. v. Latta, 168 Okl. 492, 33 P.2d 795, on pages 796, 797, Mr. Justice Welch, in the opinion of the court, stated:

"The effect of the failure to make the town a party apparently came to the attention of the plaintiff, and a subsequent effort was made to name the town as a party. However, this effort came long after judgment in the trial court, and long after this appeal had been lodged in this court. Judgment was rendered in the trial court, on December 22, 1931, and this appeal lodged here June 18, 1932. Plaintiff in error filed brief January 7, 1933. Thereafter, in May 1933, the board of trustees adopted a resolution to intervene in the case, both in the trial court and in this court. The trial court then permitted the town to intervene there, and thereafter, in August, 1933, the town purported to intervene here. The town presents a brief, but no authority is cited by the town or the plaintiff for such addition of a necessary party in this court, who was not a party in the trial proceedings. To state the proposition would seem to answer the question that it cannot be done, as this court on appeal can consider only that which is contained in the record from the trial court.

"In the case of In re Waters of Chewaucan River, 89 Or. 659, 171 P. 402, 175 P.421, the Supreme Court of Oregon said: 'The Supreme Court is a court of appellate jurisdiction only, and cannot admit interveners who were strangers to the proceeding below.'

"And in Youngberg v. Youngberg, 44 S. D. 1, 181 N.W. 835, the Supreme Court of South Dakota said: 'Intervention should not be allowed for the first time in the appellate court, under Rev.Code 1919, sec. 2322.' "

The above cases are confirmatory of our view. Many more could be cited. They constitute the greater weight of authority.

Whether viewed from the standpoint of lack of jurisdiction and power under our constitution and laws, or from the standpoint of adherence to sound rules of

orderly and regular procedure, the result indicated is the same—that the motion should be denied.

This court, however, does not wish to convey the impression that we are unmindful of the reasons so earnestly advanced by counsel for the United States in support of the motion to appear and participate in the litigation. After all, their fundamental desire in this matter is to accomplish the application in the instant case of the second liberty bond act, as amended, 31 U.S.C.A. sec. 757c, and the regulations promulgated thereunder by the secretary of the treasury (Treas. Dept. Car. No. 530, 5th Revision), and preceding and succeeding revisions thereof. The prevention of the consequences which counsel for the government envisage if such application is not made, would thereby be accomplished.

It is needless to say that this court, in passing upon the appeal in the instant case, earnestly desires to apply the federal constitution, laws, and regulations, and the state laws, each in their own proper sphere and to the extent that sound rules and principles of constitutional and statutory interpretation and construction indicate to be correct. To that end, we would welcome such enlightenment and assistance as counsel for the United States may furnish us, should they be willing to file a brief in this court as amici curiae.

For the reasons indicated, it is ordered that the motion of the United States attorney for leave to appear and to participate in the instant litigation, for the protection of the interest of the United States be, and same is, hereby denied.

BADT, J., concurs.

EATHER, C. J., because of illness, did not participate in the preparation and rendition of the foregoing opinion.