M. E. LUNDBERG, FRED DRESSLER, R. L. KNISLEY, E. THAYER BIGELOW, EUGENE V. FRANCY, FOREST B. LOVELOCK AND ANDREW ULRICH, JR., PETITIONERS, v. JOHN KOONTZ, SECRETARY OF STATE OF THE STATE OF NEVADA, RESPONDENT.

No. 5190

October 7, 1966                    418 P.2d 808

*Gray, Horton and Hill,* of Reno, for Petitioners.

*Harvey Dickerson,* Attorney General, of Carson City, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

The Nevada Constitution reserves to the people the power to propose a constitutional amendment by initiative petition, if submitted in proper form by registered voters equal to 10 percent, or more, of the number of voters who voted at the last preceding general election in not less than 75 percent of the counties in the state, and if the total number of registered voters signing the initiative petition is equal to 10 percent, or more, of the voters who voted in the entire state at the last preceding general election. Nev. Const., Art. 19, §§ 1, 2.

By an original proceeding in mandamus, seven citizens, voters and taxpayers of Nevada challenge the legal

sufficiency of an initiative petition filed with the Secretary of State on June 1, 1966. The initiative petition seeks to repeal Nev. Const., Art. 4, § 24, prohibiting lotteries, and proposes the issuance of a ten year exclusive license to Silver State Sweepstakes, Ltd., a Nevada corporation, to conduct a lottery or lotteries in Nevada upon specified terms. The initiative petition consists of 580 separate documents bearing the signatures of 31,653 persons. Its validity is questioned upon the ground that only 4,086 signatures were authenticated by affidavit in the manner required by Nev. Const., Art. 19, § 3. This challenge, if true, destroys the validity of the petition for lack of the required number of signatures.[1]

The respondent Secretary of State filed an answer to the petition for mandamus, admitting the factual averments concerning the authentication of signatures. Silver State Sweepstakes, Ltd., and certain individuals who were citizens, registered voters and taxpayers of Nevada, moved to intervene. Oral arguments on the motions and the merits were heard September 26, 1966. The motions to intervene were denied that day, with Collins, J., dissenting. However, we invited Silver State to present argument upon the merits as an aid to the court. Cf. Stephens v. Bank, 64 Nev. 292, 182 P.2d 146 (1947). As the need for an early decision on the merits was pressing, we announced our decision from the bench on September 28, 1966, directing that the alternative writ of mandamus, heretofore issued, be made permanent (Zenoff, D. J., dissenting). The Secretary of State was ordered to refrain from taking any steps toward publishing the proposed initiative measure, causing it to be printed on the ballots and submitting it to the voters of Nevada at the general election to be held November 8, 1966. This opinion is in explanation of that decision.

1. We first express our view about the motions to intervene. The movants claimed a right to intervene under NRCP 24(a)(2) which provides that "upon

---

[1]137,378 votes were cast at the last preceding general election in 1964. Ten percent of that number is 13,737.

timely application anyone shall be permitted to intervene in an action * * * when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action." Each requisite must appear, i.e., inadequate representation of the applicant's interest and a binding judgment in the action. Sam Fox Publ. Co. v. United States, 366 U.S. 683, 6 L.Ed.2d 604, 81 S.Ct. 1309 (1961). We need not reach the question of the binding effect of the judgment in this proceeding upon those seeking intervention, since we believe that their interests were adequately represented by the government (the Attorney General answered for the Secretary of State). The single issue presented by the mandamus proceeding is the meaning of Nev. Const. Art. 19, § 3,—an issue of law. What happened factually is disclosed by an examination of the 580 documents making up the initiative petition. Evidence aliunde is not needed. The interests of the parties to this proceeding, the proposed intervenors, and the citizens of Nevada are identical insofar as the resolution of the legal issue is concerned. In this context the government's representative is adequate to represent the interests of those desiring to intervene. Accordingly, a right to intervene under NRCP 24(a)(2) is not established. Notwithstanding, Silver State was allowed to present oral argument upon the legal issue, as an aid to the court in deciding the matter.

2. Mandamus is appropriate to prevent improper action by the Secretary of State, as well as to compel him to perform an act which is his duty under the law. McFadden v. Jordan, 32 Cal.2d 330, 196 P.2d 787 (1948); French v. Jordan, 28 Cal.2d 765, 172 P.2d 46 (1946); Gage v. Jordan, 23 Cal.2d 794, 147 P.2d 387 (1944); Yorty v. Anderson, 60 Cal.2d 312, 384 P.2d 417 (1963). Therefore, we turn to resolve the question of law presented by this proceeding.

3. The validity of the initiative petition before us depends upon the meaning of the third sentence of Nev. Const., Art. 19, § 3. It reads: "The petition may consist

of more than one document, but each document shall have affixed thereto an affidavit made by one of the signers of such document to the effect that all of the signatures are genuine and that each individual who signed such document was at the time of signing a registered voter in the county of his or her residence."

The content of the 580 affidavits affixed to the 580 documents comprising the initiative petition suits the Constitution. Each affidavit states: "_____, being first duly sworn, deposes and says: That (s)he is one of the registered voters of the State of Nevada who has signed the above document entitled 'An Initiative Petition Proposing an Amendment to the Constitution of the State of Nevada Relating to a State Lottery'; that all of the signatures to such document are genuine and that each individual who signed such document was at the time of signing a registered voter in the county of his or her residence." However, an examination of the 580 documents establishes that many of them were not, in fact, signed by the person who executed the affixed affidavit. Each affidavit, in those instances, is false. Because of this failure, the petitioners argue that the signatures of 27,567 persons signing the infirm documents may not be counted, thereby destroying the validity of the petition for lack of the required number of signatures.

In presenting oral argument at our invitation, Silver State Sweepstakes noted that the affiant, in most instances, did sign one of the documents which he had circulated, though not every document to which his affidavit was attached. It was suggested that we deem this to be substantial compliance with the Constitution.[2] If we were to accept this suggestion, the initiative petition would contain the requisite number of signatures.

The Constitutional history of Art. 19, § 3 and relevant case authority destroy any possibility of merit in the suggestion of Silver State. In 1960 the Legislature, by joint resolution, proposed an amendment to that article

---

[2]In every county, except Eureka and Storey, more than one person circulated the separate documents prepared for that county and, except for Eureka County, each circulator secured signatures of voters on more than one document.

and section. Stats. Nev. 1960, p. 512. At that time, the pertinent language of the Constitution read: "Each document comprising the initiative petition filed with the Secretary of State shall have affixed thereto, an affidavit made by one of the signers to each of said documents *or to the petition* * * *." [Emphasis supplied.] The proposed amendment, inter alia, deleted the underscored words "or to the petition." The amendment was passed by the 1960 Legislature and by the 1961 Legislature and was approved and ratified by the people at the 1962 general election.

Before the amendment, one affidavit by a signer of a petition consisting of more than one document could satisfy the Constitution (if other requisites, not relevant here, were also met). This is no longer true. Now, each separate document shall have affixed thereto an affidavit made by a signer of that document. An affidavit must, of course, state the truth. In the present matter, many of the affidavits were untrue because the affiant did not sign the document to which the affidavit was attached. In such case none of the signatures on those documents may be counted. Fiannaca v. Gill, 78 Nev. 337, 372 P.2d 683 (1962); Caton v. Frank, 56 Nev. 56, 44 P.2d 521 (1935); In re Opinion of the Justices, 114 Me. 557, 95 A. 869 (1915).

Fiannaca v. Gill, supra, involved a recall petition. The relevant statute provided: "The petition shall consist of any number of copies thereof, identical in form with the original, except for the signatures and residence addresses of the signers. Every copy shall be verified by at least one of the signers thereof, who shall swear or affirm, before an officer authorized by law to administer oaths, that the statements and signatures contained in the petition are true." The court there held that the statute was not satisfied when a number of copies were attached together, and one signer of one copy verified that copy. Such verification could not meet the statutory mandate as to all joined copies. The court took note of Caton v. Frank, supra, where the verification did not show that the person making the affidavit was himself a signer of the petition and was, for that reason, defective.

True, the Fiannaca and Caton cases are not factually identical with this case. In Fiannaca, the verification was made by a signer of a copy; here, as to the documents in dispute, the affidavit was not made by a signer of the document. In Caton, the content of the verification was defective, while here the content of the affidavit satisfies the Constitution. However, the underlying principle of Fiannaca and Caton is clear—the content of the verifying affidavit must satisfy designated requirements, and it must state the truth. This principle is sound because the assurance that legal requirements have been met rests upon the verity of the affidavit. If the affidavit is false, that assurance is destroyed. We must, therefore, demand strict adherence to the authentication requirements of the Constitution governing an initiative petition.[3]

The alternative writ of mandamus, heretofore issued, is made permanent.

COLLINS, J., concurring on merits, dissenting on motion to intervene:

On the motion to intervene:

I do not agree with the majority opinion of the court on the motion to intervene. I am of the opinion that Silver State Sweepstakes, Ltd., and the individuals who were citizens, registered voters, and taxpayers of Nevada, were entitled to intervene as a matter of right. It is apparent to me that the respondent Secretary of State could not, and did not, adequately represent the interest of those seeking to intervene. The motive of the Secretary of State is above reproach so far as the position he took in his answer, admitting factual averments concerning authentication of signatures to the documents supporting the petition. However, his honestly-taken position was clearly adverse to that of those

---

[3]The separate documents comprising the initiative petition were circulated by county. Some of the signers of the documents did not "affix thereto * * * the name of the county in which he or she is a registered voter," (Nev. Const., Art. 19, § 3), though that information, arguably, was ascertainable from other data on the documents. We do not express an opinion whether the Constitution was satisfied in this regard.

seeking to intervene. This, I feel, gave intervenors the right to intervene pursuant to NRCP 24(a).

On the merits:

I concur in the opinion of Mr. Justice Thompson.

ZENOFF, D. J., dissenting:

As properly recited in the majority opinion Article 19, Section 3 of the Constitution, permits a petition to consist of more than one document. There is no expressed definition of what constitutes a document. The design of that provision, at least, is to facilitate the circulation of a proposed amendment to the people. In effect, each document is a petition within itself. There is nothing specific that requires a document to be comprised of any certain number of pages, only that each document be verified by "one of the signers of the document * * *."

The majority opinion requires each verifier of a document to also sign the document as a signer, or petitioner. Assuming such person to have circulated more than one document he is thereby required to sign the petition as many times as he has signed a document. Yet, his name as a petitioner can only be counted once.

On the other hand, it was conceded at oral argument that in this situation where the verifier has failed to sign some of the documents as a petitioner, the defect is cured simply by stapling a "good" document to those that he circulated and signed as a verifier but did not sign as a petitioner. It leads me to query what the answer would be if instead of a staple the documents were held together by a rubber band or a paper clip.

Efforts of the people to petition their government should be given liberal construction. The initiative and referendum are two forms of legislative power reserved to the people. Since they deal with the reserved powers of the people they should be liberally construed to uphold the power whenever that can reasonably be done. Collins v. City and County of San Francisco, 112 Cal.App.2d 719, 247 P.2d 362, 368–369; Brownlow v. Wunsch, 103 Colo. 120, 83 P.2d 775, 777.

There is no contention that those who signed as voters were not in truth registered voters, nor is it claimed that

those who signed were misled into signing. The record indicates a sufficient number of registered voters expressed their desire to have this measure placed on the ballot. Under the interpretation of the majority, the will of the people is frustrated by a mere mechanical deficiency which was not of their own doing. To adopt the narrow construction thwarts the efforts of the voters to petition their government and the courts should be reluctant to interfere with the legislative process. Collins, supra.

The vitality of an initiated petition is supplied by the number of valid signatures. Brownlow, supra. Here, the number of signatures required by law were those of people who, as registered voters, wanted a measure submitted to popular vote. In Fiannaca, this court said the copies remaining after the defective copies were discarded, would not contain enough signatures. That is not true in this case. If the liberal interpretation which I urge were to be adopted, more than twice the required number of signatures, duly authenticated, appear on the initiative petition.

I dissent.